Shelly Hart
shelly@hartvstatebar.com
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364
310-600-7607

Plaintiff, in Pro Per

**FILED**
CLERK, U.S. DISTRICT COURT

11-8-2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KMH_____ DEPUTY

FEE PAID

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

2:21-cv-08786-CJC-KK

| | |
|---|---|
| SHELLY HART,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE BAR OF CALIFORNIA, STEVE MAZER, WILLIAM TODD, JASON KWAN, TIFFANY F. SORENSEN, SUSAN KIM, DREW ARESCA, and DOES 1 through 50, inclusive,<br><br>Defendants. | **PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, CIVIL RIGHTS VIOLATIONS & INJUNCTIVE RELIEF:**<br><br>1.) VIOLATION OF 42 U.S.C. § 1983: FOURTEENTH AMENDMENT;<br>2.) DECLARATORY RELIEF.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SHELLY HART ("HART"), who is not a lawyer, complains and alleges as follows:

## JURISDICTION & VENUE

1.      This is an action for injunctive relief, declaratory relief and damages pursuant to 42 U.S.C. § 1983 based upon the continuing violations of HART's rights under the Fourteenth Amendment to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1343, and based on questions of federal constitutional law. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

2.      Venue is also proper under 28 U.S.C. §§1391(b), because on information and belief, the sole plaintiff and one or more of the Defendants reside in, and conduct business in, had agents in, this district and substantial part of the events giving rise to HART's claims occurred in this district.

3.      This court has personal jurisdiction as the sole plaintiff and the majority of the defendants domicile is in this district and the defendants conduct business in this district.

### PARTIES

4.      Comes now HART who is and was an individual residing in the City of Los Angeles and County of Los Angeles at the time her constitutional rights were violated and at the time she was harmed by these defendants.

5.      HART is informed and believes, and based thereon alleges, that Defendant THE STATE BAR OF CALIFORNIA (hereinafter referred to as the "STATE BAR") is, and at all times herein mentioned was both a governing agency and a public corporation in the judicial branch of the State of California existing under the laws of the State of California, headquartered in San Francisco, CA 94105, with a branch office located at 845 S. Figueroa in Los Angeles, California and engages in the business of regulating the practice and conduct of member attorneys licensed to practice law within the state and who advertise online that they exist to "protect the public."

6.      HART is informed and believes, and based thereon alleges, that Defendant STEVE MAZER (hereinafter referred to as "MAZER") was employed at STATE BAR as the Chief Administrative Officer during the time period HART was harmed.

7.      HART is informed and believes, and based thereon alleges, that Defendant WILLIAM TODD (hereinafter referred to as "TODD") was employed at STATE BAR as the Supervising Attorney, Office of Chief Trial Counsel during the time period HART was harmed.

8.      HART is informed and believes, and based thereon alleges, that Defendant JASON KWAN (hereinafter referred to as "KWAN") was employed at the STATE BAR as Deputy Trial Counsel during the time period HART complained about the named attorneys and obstructed an investigation due to HART was harmed.

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

9.     HART is informed and believes, and based thereon alleges, that Defendant TIFFANY F. SORENSEN (hereinafter referred to as "SORENSEN") was employed at the STATE BAR as Deputy Trial Counsel during the time period HART was harmed.

10.    HART is informed and believes, and based thereon alleges, that Defendant SUSAN KIM (hereinafter referred to as "KIM") was employed at the STATE BAR as an investigator at the time period HART complained about the named attorneys and at the time HART was harmed.

11.    HART is informed and believes, and based thereon alleges, that Defendant DREW ARESCA (hereinafter referred to as "ARESCA") was employed at the STATE BAR as Deputy Trial Counsel in the Los Angeles branch during the time period HART complained about the named attorneys and at the time HART was harmed.

12.    HART sues each of the above named employees in their individual and official capacity.

13.    Defendants DOES 1 through 50, inclusive, are sued herein under fictitious names pursuant to California Code of Civil Procedure Section 474. HART does not know the true names or capacities of each of these Defendants, nor who first named her "vexatious," and continued to spew the allegation throughout the STATE BAR but each Defendant is somehow legally and proximately responsible in some manner for the occurrences herein alleged and proximately caused injuries and/or damages to Plaintiffs, as hereinafter alleged, and HART hereby prays that the true names and/or capacities of these Defendants may be inserted herein when ascertained. All charging allegations of this complaint are pled as to all fictitious Defendants.

## A.     COMPLAINT IS TIMELY

14.    HART presented two timely governmental tort claims to defendant STATE BAR; one on April 27, 2021, and the other on June 1, 2021. As to the first claim, HART marked "yes" and "no" on the form, as to whether the matter occurred more than six months ago, as HART does not know when she was first labeled "vexatious" by the STATE BAR. The first claim was rejected on May 21, 2021, by the "accountability department." HART'S second claim was rejected on July 16, 2021 by the same department. This complaint is timely.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

B.      **SUMMARY OF COMPLAINT**

15.     This complaint details the vile, unethical, baffling, and unlawful conduct of 10 lawyers, each reported to the STATE BAR and the STATE BAR's negligent and intentional refusal to act because of their unlawful labeling of HART. While this might read like a Lifetime Movie, this complaint evidences how corrupt lawyers are and how unethical the STATE BAR is, and has always been.

16.     HART first began reporting misconduct of lawyers representing her slumlords during her tenancies, and during litigation, back in 2017. STATE BAR closed each valid and substantiated complaint because they had secretly labeled HART vexatious without informing her. Despite its notable backlog, HART's complaints are always closed within 7-30 days. While the STATE BAR does not "adequately track performance benchmarks for its discipline system" they appear to track HART's complaints. Mr. Gavin Vasquez ("Vasquez") and Mr. Mark Harvey ("Harvey") of the STATE BAR would later confirm this.

17.     While HART had in fact been harmed by Kimball Tirey & St. John ("KTS")[1], going back to 2010, she did not report them until she learned through the conduct that led to the two lawsuits referenced below, that KTS and Jamie Sternberg ("Sternberg")[2], were working behind the scenes in more recent tenancies. They not only engaged in a bank impersonation of HART in 2015 but they also breached a 2016 settlement entered into in mediation. HART was pro per at that mediation. HART does not actually come into possession of the actual bank call recordings until late 2019. HART then reports Sternberg on April 28, 2020, for her involvement in the impersonation, as well as defaming HART to her landlords, and adversaries, alleging that HART is a "criminal" and has "multiple restraining orders granted against her." (**Claim 20-O-**

---

[1] KTS began harassing HART in 2010 and has a long history of being sued for their unlawful collection activities, and for publishing tenant Social Security Numbers in court records. They were sued by the Attorney General in 2016 and settled the matter for $200,000. Multiple complaints have been made to the STATE BAR about KTS lawyers. KTS targets vulnerable seniors in Section 8 housing (one had a stroke from the stress and later died) and our military while they are oversees fighting for our country. KTS has received over 3.5M in PPP loans while advocating for the termination of the eviction moratorium. Public records show that $600K of the 3.5M went to their rent. KTS engages in predatory conduct and recently served a rape victim in San Diego with a TRO and eviction documents because she complained of mold and got angry after their client entered her unit with no notice while she was in a bath towel.

[2] A partner at KTS for over 20 years, SBN 155193.

PLAINTIFF'S VERFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

**06205**). Despite her defamatory statements made as a lawyer, and despite *her* criminal conduct, which would at a minimum fall under moral turpitude, KWAN closed the claim on May 27, 2020, at intake, never even asking to hear the bank recordings. The complaint was closed because HART was unlawfully labeled vexatious. As pled below, they do not even deny the impersonation in response to a Request for Admissions in *Hart v Sullivan.*

18.    [One of the lawsuits referenced below*, Hart v. Espinosa, et al.,* filed in 2017, settled in plaintiff's favor in 2019 for $300,000 with no NDA. HART was pro per. The settlement prohibited all the attorneys and defendants from talking to any of HART's landlords or their agents in the future. The settlement is public, and HART disclosed the terms in writing to the lawyers in *Hart v Sullivan*. Each lawyer who signed, specifically those from The Safarian Law Firm, referenced below, have breached that settlement by talking to each of the lawyers in *Hart v Sullivan,* and it is believed that they turned over documents from the *Hart v Espinosa* case to the lawyers in *Hart v Sullivan*, despite not serving a subpoena for any of the records.]

19.    HART brings this complaint against the STATE BAR for damages for violating her constitutional and civil rights and for injunctive and declaratory relief to stop the STATE BAR from continuing to label her "vexatious," without due process. The STATE BAR is not permitted to pick and chose which lawyers they will hold accountable for engaging in identical misconduct based on who the complainant is.

20.    **HART should not be stripped of her civil rights simply because there is no shortage of unscrupulous and unethical lawyers in Los Angeles.**  Not all those that complain to the STATE BAR are "crazy," or, "are extorting money from lawyers," as publically alleged by known loon attorney, Ronald Richards, the arch nemesis of Erika Girardi. Perhaps he makes such public allegations and lumps all complainants in as "crazy" due to the mountain of complaints the STATE BAR has most likely racked up over him.

21.    While it is widely accepted that a lawyer will take your money and not do the work, and that insurance defense are some of the most unscrupulous lawyers, this does not negate the STATE BAR's duty to act. Some of the facts stated here might appear to be "typical discovery issues during litigation," but in fact, HART complains about the totality of conduct during

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

litigation, which includes destruction of evidence, witness tampering, perjury and subornation of perjury, ethical violations, evading discovery and conspiring with their clients to not comply with court orders, as well as systemic lying to judges. While sanctions are an option and were awarded in 2020 against Legacy, Sullivan and their counsel, to the tune of $3500, the STATE BAR Rules of Professional Conduct do not permit the conduct described here. The STATE BAR continuously relies on the court to reprimand such conduct but that is improper, as they have a duty to "protect the public." The STATE BAR is not in business to take direction from the court - if the evidence proves misconduct, they are required to act and they are not permitted to label a complainant "vexatious," and subsequently close valid complaints because a complainant, a woman, brings forth multiple substantiated complaints. How many victims will turn to suicide due to the tactics of vile lawyers in Los Angeles, before the STATE BAR acts?

22.     HART seeks court intervention via Declaratory Relief, as to how to move forward with her complaints, as she has been branded and it would be naïve to think any future complaint will have any other result. She is currently waiting to file substantiated complaints against Ashan Kyle Peiris ("Peiris")[3], Steven Robert Parminter ("Parminter")[4], as well as Eli Allen Gordon ("Gordon")[5], for at a minimum, violating *Rules of Professional Conduct*, Rule 3.1(a) and deceiving a judge on multiple occasions. The facts that support those complaints are stated below.

23.     HART has taken the required steps to get her valid and substantiated complaints re-opened, to no avail. The named defendants seem to take pleasure in taunting HART that they WILL NOT re-open any of her valid complaints regardless of the evidence she submits.

## C.     HISTORY OF FAILING THE PUBLIC - CALIFORNIA STATE AUDIT

24.     The Mercury News covered the STATE BAR in 2007 over the obvious corruption in an article entitled, "State Bar Ignores Errant Lawyers." In December 2014, LA Times covered Joe Dunn's lawsuit against his former employer, the STATE BAR, "Accusations Fly as State Bar of CA Leader Joe Dunn ('Dunn') Fights Ouster." Dunn (having worked at the STATE BAR)

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

---

[3] An associate at Wilson, Elser, Moskowitz, Edelman & Dicker. SBN 295344.
[4] A partner at Wilson, Elser, Moskowitz, Edelman & Dicker, SBN 90115.
[5] A partner at KTS, SBN 252823.

alleged "ethical breaches, prosecutorial lapses, fiscal improprieties by State Bar President Craig Holden [**from Lewis Brisbois**] and State Bar's Office of Chief Trial Counsel, which were being concealed from the public. In June 2016, The State Auditor, Elaine Howle, wrote, "This report concludes that the State Bar has not <u>consistently fulfilled its mission to protect the public from errant attorneys</u> and lacks accountability related to its expenditures." The report found that the STATE BAR paid **76.6 million** to buy a building and renovate [via The Sheridan Group], instead of hiring staff to discipline attorneys [such as the ones referenced here]. In June 2016, The Los Angeles Times ran an article stating, "The California State Bar is governed by a 19-member board of trustees, 13 of whom are lawyers. You do the math." Finally, in April 2021, in response to their most recent audit, The California State Auditor writes, "Our findings that the State Bar's reorganization of its discipline system has neither satisfied its statutory requirements nor improved the efficiency or effectiveness of the discipline system." In April 2021, the STATE BAR released its "2020 Disciplinary Report." The STATE Bar alleges to have received 17,500 complaints. Out of these complaints, 97 attorneys were disbarred and 114 were suspended. This averages out to the STATE BAR disciplining roughly <u>1%</u> of the attorneys reported to them. HART believes, and therefore alleges, that the amount of annual complaints made to the STATE BAR far exceeds 17,500.00.

25.     In re Brown (1995) 12 Cal.4th 205, 217 ["the aim of attorney discipline is not punishment or retribution; rather, attorney discipline is imposed to <u>protect the public</u>, to promote confidence in the legal system, and to maintain high professional standards"]. Not only are these numbers horrifying and a reflection of how the STATE BAR does <u>not protect</u> the public, but HART would venture to say that those that were disbarred came at the recommendation of a judge and <u>not</u> a client of an unscrupulous attorney, or a litigant on the receiving end of opposing counsel's unethical and unlawful conduct, as described here. Who can even believe the STATE BAR when they allege, "no prior discipline," as to justify not acting? The STATE BAR ignored Tom Girardi's complaints for decades. Is the public to believe that he is the only lawyer they protected?

PLAINTIFF'S VERIFED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

26.     HART believes that the STATE BAR improperly picks and chooses who they will go after…if you practice at big law firms (Lewis Brisbois, Wilson Elser & Traub Lieberman), and, or, are friends with the likes of Harry Safarian ("Safarian")[6], or KTS, your vile and unlawful conduct is accepted. The mere 1% of lawyers held accountable each year, are mostly sole-practitioners. The STATE BAR does not appear to have the courage to go after the big law firms who they wine and dine. HART does not sue for their selective investigations.

**D.     STATE BAR TARGETS WOMEN**

27.     Women's complaints are closed at a far greater number than those from men, but the STATE BAR cannot be sued under the Unruh Act. In 2020, a Sheilah Kimble (one of the thousands of victims of KTS) reported 3 lawyers from KTS to the State Bar (Jozef Magyar, Abel Ortiz & Paul Goodwin) for a meritless Unlawful Detainer ("UD") filing and for harassment and intimidation tactics.  On January 2, 2020, Harvey closed them all with no investigation. In 2020, a Deborah Preste reported attorney, David Rabb, for "suppressing evidence." The STATE BAR closed the complaint weeks later. In 2021, another woman reported attorney David W. Quinto ("Quinto")[7], for allegedly assaulting her on video, the complaint was closed weeks later by STATE BAR employee, Alex Binder, who has ties to Quinto. Tracy Zona ("Zona"), and at least a half a dozen women, reported Bonnie Zeldin Rosen, an attorney out of Orange County, for "illegal and immoral tactics used to render women indefensible including using police department to threaten women before a court hearing." It is said that one of these women killed herself due to the harassment.  Zona also reported a lawyer who she alleged "threatened my life" over texts. Investigator, Lisa Stowe, closed the complaint on October 21, 2021, never even addressing the threatening texts. This reckless, negligent and abusive conduct by the STATE BAR can no longer be permitted by the public and the CA State Audit Committee simply because a <u>woman</u> brings

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

---

[6] Arouton Harry Safarian, SBN 204106, known in town to be one of the most corrupt lawyers.  Attorneys who have litigated against him state that he regularly lies to judges and walks out of court laughing. He evades paying sanctions and holds up settlement payments on majority of cases he works on. He trained his protégé, Pierro Babaian, (named here) a former student of his from Glendale University, to lie to judges and engage in identical misconduct.
[7] SBN 106232. Based on public records he appears to have filed a lot of frivolous lawsuits as a pro per and does not appear to have prevailed on any of them.

PLAINTIFF'S VERFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

1  more than one valid complaint to the STATE BAR's attention. How many of these other women

2  were unlawfully labeled "vexatious?"

3      28.    HART has reported the STATE BAR to The Department of Fair Housing &

4  Employment due to their conduct towards her - an investigation was opened in July 2021.

5  **E.    HART LABELED VEXATIOUS BY STATE BAR WITHOUT DUE PROCESS**

6      29.    Although attorneys must advocate zealously for their clients (see *David v. State*

7  *Bar* (1983) 33 Cal.3d 231, 238 [188 Cal.Rpts.441]), there are limits to an attorneys' conduct, as

8  set forth in the Rules of Professional Conduct and the Business and Professions Code. (See *Hawk*

9  *v Superior Court* (1974) 42. Cal.App.3d 108, 126 [116 Cal.Rptr. 713] ["The duty of a lawyer,

10  both to his client and to the legal system, is to represent his client zealously *within the bounds of*

11  *the law . . ."].*)

12      30.    While the public is only now aware of how corrupt the STATE BAR is due to their

13  decades of shenanigans with Tom Girardi, HART knows all too well how they will turn a blind

14  eye to moral turpitude, vile litigation conduct, witness tampering, willful suppression of evidence,

15  destruction of evidence, misleading judges, bullying tactics, unlawful acts and meritless defenses,

16  and oppositions. Each time HART puts her hopes into the hands of the STATE BAR foolishly

17  thinking, "This time it will be different. This time they will do their job and protect not only her,

18  but the public," she opens her mail to receive the generated declination letter stating, "The facts

19  alleged are denied by counsel." Does the STATE BAR expect the lawyer to actually admit fault?

20      31.    After SORENSEN closed the complaint (described below) against Zhen Yang

21  "Tommy" Pan ("Pan"),[8] the associate who was sanctioned with Legacy Partners' Inc., and

22  Courtney Sullivan, despite overwhelming evidence that he engaged in unlawful conduct, witness

23  tampering and blatant perjury on the court, HART contacted MAZER about her disbelief as to the

24  closing. In order to coddle HART, as she did not know at the time she was labeled, and wanting to

25  fend off another protest[9], MAZER instructed someone at the STATE BAR to re-open the Pan

26  matter, which is detailed below.

27

28  [8] A new associate working at Lewis Brisbois, SBN 314714. He has since moved on to Wang IP Law Group.
    [9] Public protests were being held outside the Los Angeles branch of the STATE BAR that week.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

32.     It is not until HART speaks to former STATE BAR employee, Vasquez, the <u>new</u> investigator, that she learns she was labeled vexatious. While she suspected he was telling her the truth based on all the valid complaints closed over the years, she decides to see how his investigation turns out. According to Vasquez he was even encouraged by SORENSEN & KWAN "not to investigate Pan…look who [HART] is complaining." Vasquez told HART, "I am not going to listen to them/her because I believe Pan has engaged in criminal conduct. You should report him to the police." HART does not know at this time when she was first labeled. Shortly after…**Vasquez was removed from the investigation**. HART wrote him in August 2020 asking if he knew why he was removed, his response, "I do not." HART'S complaint against Pan and the partner he worked for, Cary Wood ("Wood")[10], were then moved to KIM who appeared to not want Pan (or Wood) to be held accountable. HART does not sue for the unprofessional and catty conversations that went on between STATE BAR employees who should have been terminated for their conduct, she sues for the unlawful labeling.

33.     At no time did the STATE BAR ever contact HART and tell her that she was filing meritless complaints, or advise her of her legal right to be heard on the "vexatious" matter – instead, they made a fool out of her, as she continued to forward her valid complaints having no idea there would not be investigations and that no lawyer would ever face reprimand, because she was the one complaining, an alleged "vexatious" complainant.  Should a court ever label one vexatious, a motion must be filed and a hearing must take place. The court has never labeled HART vexatious, but the STATE BAR has, and by doing so they stripped HART of her civil rights.

34.     When HART confronted both MAZER and TODD, some time around October 2020, about being labeled vexatious, they did not deny it. Instead, TODD responded, "I haven't seen a single communication in the file from him to you in which Mr. Kwan called you vexatious, so if you have something, please provide it." TODD seems to have missed the point. HART never alleged that KWAN was the one who told her she was labeled vexatious.

---

[10] A partner at Lewis Brisbois, SBN 146598.

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

35.     As stated above, based on HART'S interviews with women all over California who have submitted more than one substantiated complaint to the STATE BAR, she does not believe that she is the only woman to have been labeled vexatious. Vasquez stated that there is a way to track a complainant to see if the person made prior complaints (address, name and email) and that there is a way to mark in their records that a complainant is "vexatious." [Harvey, working at the STATE BAR confirmed to HART via phone on July 20, 2021, that each of HART's complaints are listed under her name and address.] TODD's response is quite telling though, as again, he does not deny that HART was unlawfully labeled.

36.     Once KIM closed both complaints on October 30, 2020, HART realized that she had in fact been labeled and subsequently filed her government claim with the STATE BAR. HART then served a spoliation email on the STATE BAR to preserve all communications about her, and her complaints – she even itemized each claim number referenced here. HART is hopeful that the STATE BAR has not destroyed evidence.

37.     Each of HART's valid and substantiated complaints evidenced that each of the attorneys she complained about engaged in ongoing violations of *Business & Professions Code*, Sections 6068, 6106 as well as California *Rules of Professional Conduct*, Rule 1.5, Rule 1.7, Rule 3.1, Rule 3.4 (a) and (e), Rule 8.4 and Rule 11. Instead, her complaints were closed at intake because she had filed previous complaints and was unlawfully labeled vexatious.

**F.      STATE BAR DODGING LAWSUITS: THE ANTI-SLAPP WEAPON**

38.     The STATE BAR has misused anti-SLAPP motions to dodge lawsuits for decades. If a complaint is brought in federal court, they allege that it should be brought in the California Superior Court. If a complaint is brought in Superior Court, they allege that it should be brought in federal court. If one attempts to enforce an arbitration clause - they oppose it. If one argues against arbitration, they then move to enforce arbitration. Their despicable litigation tactics are an example of their narcissistic mentality, "we can't be touched no matter what we do," and is one of the many reasons why a group of lawyers, i.e. the STATE BAR, should not be judging other lawyers who engage in the same despicable conduct. In 2017, the appellate court referenced their

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

1  concern with government agencies misuse of the anti-SLAPP defense. Government agencies do

2  not have blanket immunity and can be held accountable for their conduct.

3        39.    This is clearly NOT a SLAPP complaint. The gravamen of this complaint is that

4  HART was unlawfully labeled vexatious. HART'S civil rights have been violated and the STATE

5  BAR and its employees must be held accountable. The STATE BAR cannot enjoy "free speech"

6  when it strips a complainant of her civil rights. The labeling of HART does not fall within the

7  scope of the statute. Even if the STATE BAR has the audacity to deny the labeling - that in itself

8  is a trier of fact issue. HART sues for the "action" of labeling her without due process, and not for

9  "protected speech." HART does not sue for anything the STATE BAR said about her, or wrote in

10  the declination letters. The STATE BAR's conduct in labeling HART vexatious is illegal as a

11  matter of law. The lack of discipline of the lawyers referenced here because the complaints came

12  from HART who they considered "vexatious" are not a matter of "public interest," as

13  contemplated by the anti-SLAPP statute. Even if the STATE BAR had engaged in any form of

14  discipline such discipline would not necessarily even be public.

15  **G.**    **FIRST UNDERLYING MATTER: PACITA ESPINOSA 2016-2017 TENANCY**

16        40.    *William Gordon Lieb Matter*: HART turned to the STATE BAR in 2017 after she

17  encountered the likes of William Gordon Lieb ("Lieb")[11], representing her then slumlord, Pacita

18  Espinosa ("Espinosa"), who knowingly and intentionally renovated a 3-bedroom condo located in

19  Westlake Village, to the tune of over $115,000.00, without securing even one permit. She did so

20  with the help of David Vossooghi of Voss Construction & Development, Inc. ("Voss") who were

21  Espinosa's long time friends. Experts would later say that HART was lucky to be alive due to the

22  reckless construction. The Contractors State License Board ("CSLB") would go on to cite Voss

23  with 4 violations. Voss also did not bother to install a $CO_2$ detector, and installed a hot water tank

24  in a non-vented closet with a washer and dryer. This reckless renovation led to Los Angeles

25  County Building & Safety ("B&S") citing the property in November 2016. Dawn Messineo

26  ("Messineo"), the Realtor at Berkshire Hathaway Home Services ("BHHS"), who showed HART

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

---

27

28  [11] An associate at the Manfredi Levine Law Firm, SBN 114215.

PLAINTIFF'S VERIFED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

1 the home (and lived in the same HOA) neglected to not only inform HART the home was an

2 unlawful dwelling, but that it had no $CO_2$ detector, as mandated by law. The improper installation

3 of the dryer combined with the property lacking a $CO_2$ detector was a recipe for disaster.

4     41.    Messineo would go on to forge HART's signature on an addendum in the lease and

5 send her confidential lease to Espinosa's criminal daughter, Maria Theresa Espinosa Booth

6 ("Booth") without HART'S permission. Booth then stored HART's private lease on her server at

7 work owned by The Fulfillment Fund ("The Fund"), represented by Munger Tolles, for any

8 employee to have access to. Martha Jean Mosier ("Mosier")[12] in-house counsel for BHHS, would

9 go on to engage in alarming conduct described below and then brought on the likes of Jesse David

10 Obrand ("Obrand")[13], to represent them in litigation.

11     42.    HART paid to Espinosa $3000 a month despite the property being an unlawful

12 rental, and it being against the law to accept any rent. Lieb knew or should have known, as a

13 "landlord attorney," that it was against the law. Even when on notice of the law, he turned a blind

14 eye and continued to demand rent and terrorized HART in her home for almost one year with

15 letter after letter and email after email:

16     •   Lieb forced HART to pay rent on a non-permitted and uninhabitable home per

17 Building & Safety, (Violation of Ca. Civ. Code Sections 1941.1 & 1942.4) all while refusing to let

18 her out of her lease.

19     •   Lieb brought a locksmith along with Mike Plisky ("Plisky") the Property Manager,

20 to lock HART out of her home on December 7, 2016, without a court order. The Sheriff stopped

21 him, and threatened to arrest him.

22     •   Lieb served on HART a 3-Day Notice demanding he take possession of the

23 property and her belongings, indefinitely, over a 5-hour repair ordered by the county, with no

24 intent of ever doing the repair.

25     •   Lieb & Plisky then asked the plumber, Roy Madigan ("Madigan"), to pull the

26 permit, but "don't do the work," impeding on HART'S ability to implement the "repair and

27

28 [12] SBN 164240.
[13] A friend of Mosier, working for his dad at The Obrand Law Group, SBN 270144.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

deduct" remedy. HART was then forced into a hotel, as she was not permitted to sleep in the home per B&S. HART stayed at the hotel for almost two months, as Lieb would not permit the work to be done despite a "Yellow Tag" placed on the property by B&S.

•   Lieb then ignored HART's request for repair and filed a meritless and malicious UD on a non-permitted home, instead of simply repairing. Lieb's conduct was in violation of Business and Profession Code Section 6068, "a lawyer shall not bring a legal action, conduct a defense, or assert a position in litigation, or otherwise take steps, solely for the purpose of harassing or maliciously injuring any person or to prosecute or defend a case solely out of spite."

•   Lieb wrote HART's counsel on December 30, 2016, that she was <u>not</u> entitled to repairs, as the "unlawful detainer procedures must run their course," and then kept HART's water off for another month…mocking HART in the letter. [Lieb, a 60-year-old man at the time, was so adolescent he would allege to HART'S new lawyer that a prior lawyer had "withdrawn" when in fact it was Hart who had terminated the relationship.] Lieb then met with Espinosa & Plisky (in private meetings) and agreed to keep HART's water off indefinitely - forcing HART to live in a hotel at $200 a night while the "Yellow Tag" remained on the front door. He then wrote HART's "habitability" lawyer that he would not speak to him and only speak to BASTA handling the retaliatory eviction.

•   Lieb & Matthew Roland Eccles[14] then lied to B&S, in writing, alleging HART was "obstructing efforts" to repair while at the same time writing HART'S lawyers that she was "not entitled to repairs." Lieb had an ethical duty to tell the truth and to not advocate to keeping HART's hot water off for two months. His conduct was inhumane.

•   Lieb, Espinosa, Booth & Plisky finally agree to give HART hot water on or about January 30, 2017, at which time Lieb dismissed the UD one day before the demurrer was to be heard. [The defense cost HART thousands in legal bills while she spent the 2016 holiday season in a small hotel room.] Such a filing is a violation of California *Rules of Professional Conduct*, Rule 3.1 (a)(1) *Meritorious Claims and Contentions.*

[14] The partner Lieb worked under at Manfredi Levine, SBN 125489.

PLAINTIFF'S VERIFED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

- In order to save face, Lieb foolishly writes BASTA, "Now that I have a lawyer to talk to we will repair." He had two lawyers to talk to for two months, to include BASTA, and admits this in his December 30, 2016, letter, "we have no obligation to deal with her on two fronts with two separate attorneys." Lieb is a pathological liar.

- Discovery produced in *Hart v. Espinosa,* evidenced Lieb & Matt Eccles were threatened by B&S that if they did not repair the hot water, Espinosa would be reported to the D.A for "criminal prosecution." This would be the REAL reason HART was finally permitted to have hot water. Lieb lied in his letters and plotted to keep HART's hot water off. This is despicable conduct and clear moral turpitude.

- Lieb then wrote HART that she would not be reimbursed her hotel cost of $10,000 because it was HART's fault she had to go into a hotel. She stayed in the hotel for 2 months because he would not comply with the "Yellow Tag" and give her hot water.

- After the work mandated by B&S was finally completed, the inspector would not sign off on the permit, as Madigan had not installed the tank properly. Lieb then suggested in writing that HART pay thousands to install a new hot water tank and "if" done properly she "might" be reimbursed. This was done to harass HART, all while Espinosa still owed HART $10,000. Lieb was not merely advocating for his client he was a willing participant and co-conspirator.

- Lieb then lied under oath at his deposition claiming he did "not know Martha Mosier," despite not only speaking to her about HART, but having worked with her on cases, as public records evidence.

43.     Plaintiff reported **Lieb** for the above referenced conduct to the STATE BAR on January 20, 2017, **Case No. 17-01052.** A Joshua Mendelsohn closed the claim 7 days later on January 27, 2017. HART then wrote the STATE BAR on February 9, 2017, asking to re-open the investigation. James Chang ("Chang') then closed the complaint for good on March 14, 2017, alleging Lieb, "did nothing wrong." Chang has since been promoted to Office of General Counsel at the STATE BAR.

44.     Plaintiff now believes and therefore alleges that her complaint was closed for being a woman and that Manfredi Levine was "too powerful" for the STATE BAR to go after. HART does not sue under the Unruh Act she is simply making a personal observation. This could possibly be the first time she is officially labeled "vexatious," but only discovery will bring out the exact date.

45.     Lieb's obsession with HART did not end there. At the recommendation of his boss at Manfredi Levine, he then passed the baton to Michael Harvey Raichelson ("Raichelson")[15], but controlled him from a distance - still refusing to allow HART out of her lease. He also referred Booth, who never met HART, to Carol Linda Newman ("Newman")[16], who Lieb used to work with, to file a malicious TRO against HART while at the same time refusing to let HART out of her lease. HART later discovers that Booth & Espinosa had been told by Mosier, and Sternberg, that HART has a "history of restraining orders." Such filings never occurred and therefore never granted. Discovery also showed that Lieb told Booth that she had no basis to get a TRO yet still helped her get counsel. Lieb also knew that Booth intended to take the stand and lie that she had nothing to do with the property and did not know who HART was. Evidence later produced in *Hart v Espinosa* proved that Booth was very involved in HART's tenancy, had possession of her lease and even negotiated the terms with Messineo and that she conspired to evict HART in 2016 and was in contact with Lieb on an ongoing basis throughout HART's tenancy.

46.     <u>Carol Newman Matter</u>: The TRO was denied, as the court found that HART had not "harassed" Booth. [HART would go on to get a stipulated restraining order against Booth, Espinosa, Plisky & their defense lawyers in *Hart v. Espinosa, et al.*, as part of her settlement.]

•   At the RO hearing, Newman, knowing full well that Booth had co-controlled the property, knew who HART was, had possession of HART's lease at work, negotiated the terms of HART's lease prior to HART taking occupancy (unknown to HART at move in) and partnered with Lieb in this retaliatory eviction while HART was forced into <u>a hotel</u> due to no hot water at

---

[15] A bankruptcy lawyer and a debt collector, SBN 174607.

[16] A partner at Alleguez, Newman & Goodstein, LLP, who handles business contracts, commercial real estate transactions and palimony cases, SBN 89977.

PLAINTIFF'S VERFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

her residence, suborned perjury and allowed Booth to deny it all. Booth literally stated under oath that at the time HART contacted her months after taking occupancy, she "did not know who she [HART] was and I had to ask my mom, is this her?" Discovery evidenced that within 20 minutes of receiving one email from HART, Booth forwarded the email to Plisky and Lieb. All of Booth's communications about HART were made from The Fund work email, and server. Booth and her lawyers from the Safarian Firm would later deny these communications existed, and filed a Protective Order on a subpoena HART served to The Fund for records.

• Once discovery came in from The Fund, HART sent the transcript to Newman along with the discovery proving Booth had not only lied under oath, but also filed a false police report (her own assistant named as a witness in the report would go on to say that she told Booth she never witnessed HART harass her). Newman remained silent. In doing so she violated her *Duty of Candor Toward the Tribunal*, "an affirmative duty to inform the court when a material statement of fact and law has become false or misleading in light of subsequent events."

47. It makes no difference whether an attorney acts in a representative capacity for someone else or for himself if he commits acts involving moral turpitude, dishonesty or corruption." (*Lee v. State Bar* (1970) 2 Cal. 3d 927, 941 [88 Cal. Rptr. 361, 472 P.2d 449].)

48. HART subsequently reports Newman to the STATE BAR, **Case No. 18-30906**. The claim was closed within 10-days at intake because HART was labeled "vexatious."

49. *Anita Gumm Matter*: HART retains Anita Gumm ("Gumm")[17] to defend her in the baseless and malicious RO matter.

• Gumm failed to disclose to HART at the time she demanded a $5000 retainer that she had never handled a CH-TRO before, a violation of *Rules of Professional Conduct*, Rule 1.5(b)(10).

• Gumm wrote that she did not know how to do a background check on Booth or run civil suits associated with her. [After the hearing HART discovered that Booth (working as the CEO of The Fund) had a criminal record for stealing $10,000 from her former boss. This would

---

[17] Partner at Gumm & Green, LLP, SBN 164967, who now lists "domestic violence restraining orders" and "elder abuse temporary restraining orders" on her website as a "areas of practice." No Civil RO matters are listed.

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

have been useful to know while Booth was lying under oath and would have gone to her credibility.] This would also evidence pure incompetence by Gumm and that her ability did not align with the $350 an hour she demanded [Rule 3-110].

•   HART did ALL the work to include preparation of her Declaration and all exhibits filed in opposition, and preparation of all questions to ask Booth on cross (which Gumm would ultimately <u>misplace</u> during the hearing).

•   Gumm struck a Pro Tem judge without conferring with HART, and the matter would be held over until after lunch - billable hours for Gumm. This is ironic, as Gumm alleges on her website to be a Pro Tem judge in Ventura County. Had the case not been heard by Judge Timothy Dillon ("Dillon"), who knew The Fund ( and stated so on the record) the result could have been quite different.

•   During the four hours at court, Gumm said nothing to HART and worked on another case. There was no preparation for the hearing. She then demanded another $3,500 from HART in the cafeteria at Mosk in order to continue the case. HART was forced to give her Credit Card number to Gumm's husband over the phone.

•   Gumm lost the questions to cross-examine Booth with. Being that she did not learn the case - she as unable to go off the cuff - annoying Dillon, who then tells her to, "move on."

•   During the afternoon break, Gumm lied to HART in the hall that she would not only get a RO on her "for life," but that if she did not stipulate, and she lost, she "could not appeal." Gumm had a duty to inform HART of her legal rights.

•   During the break, Booth and Newman ran to tell Raichleson (who was there representing Espinosa who HART called as a witness) how well it was going (Dillon was believing Booth's perjured testimony) at which time he updated Lieb & Eccles via phone.

•   Gumm did not research RO appellate cases. Had she done so she would have found substantial case law that would not have permitted the court to even grant the RO, and subsequently HART would never have stipulated. *Russell v. Douvan (2003)*, 112 Cal.App.4th 399.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

• Gumm knew HART was clearly under duress in the court hall when she drafted a one-sided stipulation and forced HART to sign it as the judge was walking back in from his afternoon break.

50.     Raichelson, Newman and Lieb each knew of Booth's involvement in HART's tenancy, and the property, and knew she was going to take the stand and LIE about it all.

51.     Lieb told Raichelson over the phone, "Make certain it [the stipulation] is an Order of the court." Raichelson ran to relay this to Newman who then asked the court to make it an Order. While this was done to brand HART and humiliate her, it would turn out to be a gift of sorts, as Dillon never put any time period on the Order, it therefore automatically defaulted to 3 years from the date of issuance (*CCP* Section 527.6(j)(2)).

52.     In a childish effort to humiliate HART, Raichelson wrote HART while needlessly copying B&S employees, "You stipulated as you knew the judge was going to rule against you." HART now knows that had Dillon granted the RO it would have been thrown out on appeal.

53.     This is what Gumm was paid $8500.00 for. HART contacted Gumm about arbitration despite the clause being unconscionable, but she did not respond and refused to address the inflated fees or refund her a penny.

54.     Gumm had a duty that precludes her from taking a position adverse or antagonistic to the client without the client's free and intelligent consent, and a duty to communicate with the client and to explain the relevant circumstance and material risks. When she lied about the appeal and struck a pro tem judge without any communication, she failed in this duty. It should have been HART's choice to strike a pro tem. She had a duty to be prepared for the hearing as well, and based on the transcript and losing the questions, she clearly was not.

55.     Gumm was reported to the STATE BAR on April 27, 2021, **Case No. 21-O-05390**, for her incompetent conduct, deception, and overbilling HART for the services she didn't provide (charging an unconscionable fee, *Rules of Professional Conduct*, Rule 1.5). She also violated Rule 3-110, "Failing to Act Competently." Jaymin Vaghashia of the STATE BAR closed the complaint without investigation on May 25, 2021 stating, "The rules you cited in your complaint were not the effective rules until November 1, 2018…." Somehow justifying the conduct

**SHELLY HART**
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

described above. And, "it is normal for the client to do a lot of the work to save costs." HART was billed for doing all the work not to mention Gumm lied about the appeal process and lost all the questions during cross - and didn't even do a basic background check on Booth after HART asked her to. The real reason for closing the complaint was due to HART being labeled vexatious.

56.     There would never have been a one-sided stipulation had Booth/Newman not lied and Gumm not been incompetent. The stipulation finally came to an end in June 2020.

57.     _Michael Harvey Raichelson Matter_: As stated above, Raichelson enters HART's tenancy in May 2017. In June 2017, B&S returned to the property for the 4th time and essentially ordered the condo be demolished. HART presumed they would <u>now</u> allow her out of her lease and return her $4500 deposit. They refused. HART subsequently stopped paying rent in July 2017, per code. She thought certainly they would <u>now</u> permit her to move out. They did not.

• Raichelson served a "3-Day Notice" in July demanding rent on an uninhabitable home set for demolition. HART had to engage lawyers to fight with him informing him of the code, and that he could not legally demand rent. Despite this he would not stop his collection tactics and threats.

• Raichelson then demanded in writing in July 2017 (33-days after the county cites the home for the 4th time), that HART vacate the property in "7 days" with no alternate housing in place, and no moving costs, as required per code. He attached some bizarre non-binding agreement, which would <u>only</u> be signed by HART and not Espinosa. He alleged that Ruben Carmona ("Carmona"), the new contractor, needed to start renovations knowing full well that renovations could not begin without the County being present to authorize them, and Carmona had NOT submitted <u>any</u> plans to B&S as of that day. [Demolition would not occur until <u>December 2017</u> despite Raichelson harassing HART to leave the property in "7 days" back in July 2017.]

• HART files her lawsuit against Espinosa in November 2017.

• In retaliation for HART's lawsuit, under direction from Lieb & Eccles, Raichelson filed a second UD and demand for $11,000 + $100 a day. It was not only defective on its face, but a violation of _Civ. Code Section_ 1942.4(a). He tried to backdate the signing of the UD to be before

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

the lawsuit was filed, but could not backdate the actual date of filing. The filing of the UD was a violation of *Rules of Professional Conduct*, Rule 3.1 (a)(1) *Meritorious Claims and Contentions*.

58.     After HART filed a Demurrer and served a subpoena on Raichelson to take Espinosa's deposition in the eviction matter, Raichelson came running to allow HART out of her lease, dismissed the baseless UD and paid all moving costs per code.

59.     HART presumed (as she did Gumm) that she had reported Raichelson's conduct to the STATE BAR back in 2018, but did not. She subsequently filed a complaint with the STATE BAR on or about April 27, 2021, **Case No. 21-O-05322**. STATE BAR employee David Aigboboh closed the complaint on May 25, 2021, at intake due to HART being labeled vexatious.

60.     It is clear that both Aigboboh and Vaghashia of the STATE BAR, were working together to close the Raichelson and Gumm complaints on the same day, May 25, 2021, as again HART was labeled vexatious.

## H.     HART V. ESPINOSA, ET AL., CASE NO. LC106203

61.     While Raichelson led HART to believe that Espinosa had not retained counsel, days later, Christina Karayan (Karayan)[18], representing Espinosa, not only misled the court that HART refused to Meet and Confer (having never contacted her) and needed an extra 30-days to answer the complaint, she somehow had ample time to prepare a subpoena to take HART's deposition (when no one else had appeared in the case) and had ample time to prepare an entire set of discovery they propounded on HART when she replied to an email from HART asking why they had not contacted her, yet were asking the court for an extension to answer. Karayan has not been reported to the STATE BAR as of yet, but the STATE BAR is free to investigate her conduct on their own.

62.     Once HART named Booth as DOE 1, Pierro Babaian ("Babaian")[19], along with Bart Ring ("Ring")[20] representing Voss as well as Obrand, representing both BHHS & Messineo,

[18] Working at The Safarian Firm, APC, SBN 22570 (one can Google Harry Safarian to see what he is about). Karayan used to work at Lewis Brisbois who were representing Legacy Partners & Sullivan in *Hart v. Sullivan*, and has communicated with counsel in the case despite a settlement from Hart v Espinosa prohibiting her to do so.
[19] An associate from The Safarian Firm, APC, SBN 303982, admitted to the STATE BAR in 2015, and went to Glendale Law School at age 30.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

took turns engaging in the most malicious and adolescent conduct - beating up on a pro per litigant who had never filed a lawsuit before, and naturally made minor mistakes. And despite it all, HART still prevailed with a $300,000 settlement and no NDA. This continues to enrage them and even tried to interfere with Hart v. Sullivan, et al.

63.     Knowing that the subject property HOA was filled with a family of deer due to a neighbor *feeding* them, on November 6, 2017, Obrand writes HART, "*When will you be serving the family of deer with copies of the Complaint, or have their attorneys already accepted service of process?  Likewise, when do you plan on deposing them and do you intend on getting an interpreter and filming those depositions as well.*" His father, attorney Michael Obrand, was copied on the email. Quite the duo.

64.     In discovery, BHHS produced lawsuit filings pertaining to another woman named, Shelly Hart - this is when HART first learned that Lieb, Mosier and Sternberg, along with executives at BHHS were spreading lies around town claiming that *Wilson v. Shelly Hart,* a 2000 case out of Ventura*,* was HART. It would turn out to be no shock that Mosier would hire the likes of Obrand to represent them. Mosier would go on to try and get HART arrested for an alleged "bomb threat"…yes, a bomb threat, as retaliation for reporting Messineo to the Sherriff for forging her signature. HART only learned this via discovery responses from BHHS. Thankfully there was no investigation as no one believed her. How she is allowed to practice law is mind-boggling. HART did not report Mosier's vile conduct but the STATE BAR is free to investigate her on their own.

65.     At Messineo's deposition, Obrand went into a rage over a document he produced a year prior (at least 2 copies of it, in fact) and thought he could claw back the document at her deposition. HART continued to ask questions about the email at which time poltergeist and E.T. inhabited his body. He then continued to mock HART that she did, "not know how to take a deposition." He even threatened her after the deposition with sanctions, which of course he never pursued. At the deposition he laughed, "I can't believe this case hasn't been dismissed." He then

---

[20] Working at his own firm, Bart Ring Law, SBN 126235, and has prior complaints according to a former client who states that he was forced to refund her $30,000.

PLAINTIFF'S VERFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

told Victoria Orafa ("Orafa")[21], "I owe you money." It would turn out he bet Orafa month's prior that the case would be dismissed. Orafa and Obrand would taunt HART in writing with threats of "another TRO" if she tried to get basic discovery from a third party. This is the adolescent garbage HART put up with throughout the case. This conduct is systemic and unfortunately accepted in the legal world, and at the STATE BAR.

66.     Orafa would harass HART for her Social Security Number demanding it in discovery (for no valid reason) and tormented her that she WOULD get HART's Personal Identifiers, and they would be given to all the defendants. She even filed a MTC them. Judge Rupert Byrdsong thankfully put an end to that. Orafa would go on to lie to Judge Convey, on the record, that AFTER settlement, "HART propounded discovery on parties covered under the settlement," which never happened. She then joined Ring's malicious and failed attempt to get HART sanctioned $6400 referenced below.

67.     While HART has not made any formal complaint against Orafa & Obrand, the STATE BAR is free to act on their own.

68.     Karayan & Babaian engaged in fraud on the court by filing a cross-complaint against Voss, who Espinosa & Booth worked with to build the home without permits, and despite no responsive pleading ever filed, they never filed a default, never propounded any discovery on them - nor deposed them.

•     Babaian would go on to lie to the court in a Protective Order filed on November 17, 2017. In the moving papers he sought **$2666** ($160 an hour) to stop HART from taking Booth's deposition and to stop The Fund from having to turn over records about HART on their server. It was taken off calendar by Judge Lippitt at an IDC.   Babaian and Karayan after a M&C in April 2018 with a lawyer HART brought in for a short period of time, maliciously put it back on calendar days after promising in writing that they would turn over Booth's email on The Fund server, previously withheld by them under penalty of perjury in response to HART's Request for

---

[21] Goes by Victoria Kajo, working at that time at Manning & Kass, SBN 265037, representing Plisky & Brian Troop. Orafa has been sued countless times as public records evidence. After a Department of Insurance investigation into the file she ran off to Gordon Reese. Her former boss, Rinat Klier, would brag about making $100K on the case.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

Production. They now sought **$7,780** at $275 an hour for the same motion, this included the "first appearance fee" of $435.00. Despite the subpoena seeking emails about HART from the server and the subpoena being justified, for some unknown reason, Judge Paul Baciglaupo granted the order and without explanation, sanctioned HART $2500 for the prior motion taken off calendar but at $275 an hour. No one and no appellate firm could understand the ruling, as HART was simply seeking Booth's emails about plaintiff from her work. Being that it would cost more than the sanctions to fight it HART paid the sanctions. After Retired Judge Johnson appearing for the first time in the case at a demurrer hearing, let Booth out of the case due to "lack of privity on negligence," which then led to a Notice of Appeal, Babian filed a Memorandum of Costs ("MOC") on October 16, 2018, asking for the **same** $435.00 he had already been paid. Babian intentionally misrepresented the facts as to The Fund subpoena, and perjured himself when he swore under penalty of perjury not only that the documents sought in the subpoena did not exist, but in the MOC, knowing he was already reimbursed those costs [Booth would later pay $30,000 of the $300,000 settlement to HART].

• The Fund would later turn over the records to which both Babaian and Booth swore did not exist, after they were brought into the case as a doe defendant.

• Babaian continuously objected to basic discovery with boilerplate objections, refused to produce documents, withheld evidence as to Booth's involvement in HART's tenancy, and the name of the original contractor, David Boyd, for one year, despite knowing the name. Babaian **lied** to Judge Byrdsong stating that he and his client did, "not know the name of the original contractor," (even engaging in quite the performance at court pretending to call his client on the phone for the name). Per David Boyd both Babaian & Karayan (both of their SBN appeared on every filing) knew all along they **had spoken to the contractor a YEAR prior, and intimidated him into thinking he was going to be sued for the defects despite knowing that it was Voss who built the home w/o permits** (a violation of BPC, Section 6068, subdivision (d) seeking to mislead a judge.)

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

1    • Babaian also lied to Judge Byrdsong that a Special Masters in *Estakhrian v. Mark*

2  *Obenstine,* had <u>not</u> sanctioned both Obenstine and Harry Safarian $70,000, and that HART was

3  "maligning" his firm by saying so. The matter was/is public and on the docket in that case.

4    • Babaian presented a declaration *In Camera* alleging that George Reich (Espinosa's

5  partner in crime) was suffering from dementia and therefore Espinosa should be his Guardian ad

6  Litem.  It would turn out that this so-called doctor had never examined Reich and was not a

7  Neurologist nor did he even practice in the field of Geriatrics. While HART does not know the

8  name of the "doctor" she believes the man was a friend of the lawyers at the Manfredi Levine law

9  firm. Reich's so-called actual doctor, <u>not</u> a Neurologist, who wrote a letter to try and get him out

10  of a deposition, would shut down her practice during litigation.

11    • <u>Ring,</u> in retaliation for HART filing a Declaration about him detailing his vile

12  conduct in the case, attempted to get her sanctioned $6400 (owed to him by Voss) after

13  settlement. He made many false allegations in the motion to include that plaintiff had threatened

14  him with a RICO "criminal" case when the threat was as to a <u>civil</u> case. His motion was not

15  supposed to be heard for months. He then makes a call to Department U in Van Nuys and asks

16  Judge Convey's courtroom assistant, Roxanne, to move it up. She did so as a favor. Ring would

17  later lie to STATE BAR that the court "consolidated motions." It is well documented that it was

18  he who made the request. HART called the courtroom and was told Ring requested it. <u>The</u>

19  <u>sanctions were denied</u>. Even after the denial, Ring kept begging the court to reconsider. [It was

20  like watching a child nag his parents to let him play outside.]

21    • Ring represented Voss while they were a <u>suspended</u> corporation.

22    • Ring <u>forged</u> the signature of his alleged partner, John Dale.

23    • Ring told the STATE BAR that he was "not representing Voss in the cross-

24  complaint" yet appeared for them in the case, as the docket proves.

25    • Ring played games for a year refusing to produce his clients for deposition and

26  then <u>lied</u> to the STATE BAR that he refused the deposition because HART allegedly "did not

27  copy all the parties on the deposition notice." The POS proving that was incorrect was in the

28  STATE BAR's possession, at the time of the stated lie.

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

• Ring lied to HART in writing that discovery was stayed in the case because he asked for an IDC without asking HART if she would agree to an IDC.

• His games went on and on, and all the other lawyers in the case were all too happy to play along with his madness.

69.     Ring and Babaian then filed a "Notice of Settlement" alleging Voss and Espinosa settled as well. It was told to HART by Ring that, "Voss has no money," apparently a month later, they did. Ring and Babaian then left the case on the docket over this alleged settlement for a year continuing to lead the court to believe that their clients, who live 5-minutes apart from each other, in Los Angeles County, could "not be found to sign this alleged settlement." There is no evidence that a real settlement ever took place.  [It would turn out that they somehow thought if they left it on calendar they could help counsel (Peiris & Parminter) in *Hart v Sullivan* get HART labeled vexatious.] Both had spoken to Peiris and Parminter (representing LaSalle Investment Management, and Kyle Dupree), who were trying to allege that HART was vexatious (despite prevailing in her last case) via an Affirmative Defense. An Affirmative Defense is not the proper way to assert such a claim, yet they tried twice. This was a meritless defense as well. HART demurred and the defense was SUSTAINED without leave. Ring & Babaian, were not permitted per settlement to talk to any agent of HART's landlords. In doing so they both breached the 2019 settlement.] Both Peiris and Parminter had a copy of the Espinosa settlement and knew they were not allowed to talk to the Safarian lawyers.

70.     Babaian complaint, **Claim No. 19-O-22238,** closed at intake despite lying to a judge on multiple occasions, because HART was labeled vexatious.

71.     Ring got away with lying in the sham investigation (**Claim No. 19-O-14688**), denied the facts stated above and that was somehow sufficient for the complaint to be closed. It is improper for a lawyer to impede a STATE BAR investigation. The STATE BAR knew that Ring had a history of complaints and still did nothing, as HART was and is labeled vexatious.

72.     To prove the absurdity that is the STATE BAR, HART even forwarded them the sanctions order as to Harry Safarian, **Case No. 19-O-23412**, to see how soon they would close the complaint. They did a brief *investigation*, Harry Safarian denied the sanctions, and they closed it.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

73.     Since the STATE BAR turned a blind eye to the $70,000.00 sanctions (on the court case docket), Harry Safarian has been sanctioned in the following cases:

- *Chelsea Gottfurcht vs. RST & Associates, et al.,*
- *Ronald Burke et al., vs. Signal View Apartments, et al.,*
- *John Beckham et al., vs. Niko Enterprises LLC, et al.,*
- *Phil Williams vs. 1819 S. Gramercy, LLC,*
- *NRN Holding Co, LLC vs. LA Banquets, and,*
- *Cade Carradine vs. S.M Morgan Inc., et al.*

## I.     SECOND UNDERLYING MATTER: LEGACY/LASALLE 2018+ TENANCY

74.     In November 2017, after surviving the nightmare tenancy of Espinosa and Booth, HART moved into a "luxury" apartment in the San Fernando Valley. Within weeks she learns that the property was for sale. HART had not been told prior to signing her lease and was deeply concerned, as she had lived through a prior sale in 2010 (the first time she encounters KTS) and knew what she was in store for. She was also fearful that local owners (who had previously engaged in the 2015 bank fraud matter) could buy the building forcing her to have to move yet again.

75.     HART's fear would turn out to be warranted, as while the bank fraud culprits did put a bid on the property in March 2018, LaSalle Investment Management ("LaSalle"), a subsidiary of JLL, purchased the property in July 2018, and hired known slumlord, Legacy Partners ("Legacy"), who would end up destroying the "luxury" aspect of the property and the morale of the tenants. Kyle Dupree ("Dupree") the Managing Director allowed them to destroy the property and continues to permit them to manage the property despite the condition of the property and the high turnover. Two employees from the 2016 settlement, Tom Gibbons and Deanna OBrien, along with Sternberg (outside counsel for LaSalle), who were not permitted to be involved in any HART tenancy, or to have access to her files, were now involved in her 2018 lease. HART sues for Breach of Settlement, Breach of Habitability, Nuisance and Fraud.

76.     Once Sternberg and *KTS* found out that HART resided at the property she became a target with history repeating itself. They then enlisted the Assistant Manager, Courtney Sullivan

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

("Sullivan") and The Manager, Davin Ross ("Ross") to help them with monitoring plaintiff around the clock. Discovery shows that Sullivan was taking videos of HART with her cell phone off property and discussing HART with her co-workers around the clock. Residents and co-workers begged for the termination of Sullivan, but they kept her on to harass HART.

77.     On October 24, 2019, HART entered the leasing office for the first time in a year to get a copy of her 2017/2018 lease in preparation for her lawsuit. She had initially asked for a copy from Steven Lenard Sapp ("Sapp") the Regional Manager, who has a criminal record as well, as to evade the leasing office - but he did not send it. Once HART entered the leasing office, Sullivan laid hands on HART and forced her out of the office on video. Sullivan's co-worker took HART's side and gave a written statement supporting HART.

78.     On October 29, 2019 HART discovers that on October 25, 2019, Sullivan made a copy of her California Driver's License ("CDL") at 1:02AM (unauthorized access) and published it in a failed attempt to get a TRO against HART. She immediately informs defendants Legacy, LaSalle and Sapp, that her CDL was taken without her permission and published by Sullivan. They did not respond and took no action. They permitted Sullivan to continue to have access to HART's tenant file.

79.     On November 5, 2019, Sullivan admits to Legacy & Sapp to taking HART's CDL.

80.     _Hart v. Sullivan, et al.,_ was filed on November 12, 2019.

81.     Sullivan was then fired on November 14, 2019, allegedly due to publishing the CDL, along with communications Sternberg and Legacy had about HART. [At the recommendation of Sapp, Sullivan is still working in property management at AVENUE5 with daily access to tenant Personal Identifiers.]

82.     In December 2019, HART issues subpoenas to both LaSalle, and Legacy, for witness statements and copies of all videos from 10.24.2019 (inside and outside the leasing office), which would exonerate her in the RO matter pending at that time.

**J.     HART V. SULLIVAN, ET AL., CASE No. 19STCV40526**

83.     Pan and Wood come into the case in December 2019 representing Legacy and Sullivan. They alleged that they did not represent Sullivan in the RO matter.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

- Despite already being retained, Wood contacts HART asking for an extension to file a responsive pleading falsely alleging, "they [Legacy] do not have counsel yet."

- Wood then conspired with Sternberg & KTS, knowing discovery was due, to file an anti-SLAPP knowing it was futile, as there was no cause of action against Sternberg/KTS at the time. HART was merely seeking Injunctive Relief. The motion was filed one day after Sternberg emailed HART, "I phoned you to inquire if you will agree to put a hold on discovery until after you amend the complaint." The motion was clearly only filed to stall discovery for months – and it did. The anti-SLAPP would later be deemed "moot," as there was no cause of action.

- Wood spoke to Karayan (a former Lewis Brisbois colleague) about HART despite knowing that there was a settlement (public record) that did not allow for him to speak with her. Pan & Wood both withheld videos and witness statements from 10.24.2019. HART then files a Motion to Compel ("MTC").

- In Opposition to HART's MTC, both Pan and Wood lied to that court that Legacy hired a "Nivardy Flores from AUTS to search for the videos, but they could not be found." AUTS former counsel, Paul Czer ("Czer"), writes HART that AUTS never came to the property to search for those videos. They both lied to that court that "Legacy and counsel went above and beyond, both in terms of labor and financial resources to ensure that responsive documents were provided to Respondent." Per discovery…this never happened. Not one penny was paid to search for any videos, as they were saved by staff and Sapp and simply withheld in hopes of helping Sullivan.

- Pan plotted w/ AUTS employee, Donald Edwards, to produce documents that were to mislead the court that some sort of video search had been done at the property, despite the emails evidencing that Edwards was telling Pan the documents did not support what he wanted them to support.

- Pan went on, "In fact to finally produce the videos responsive to Respondents subpoena, Legacy expended considerable resources to have it's off site video vendor come on site

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

1    to locate the video files physically and then <u>hand-deliver</u> to counselor office for viewing." The

2    vendor not only never went to the property to search for the videos, he never went to Pan's office.

3    • Pan further states, "**Respondent is asking the Court to take a leap of faith and**

4    **believe that it is not possible that the requested documents do not exist.**" Those documents

5    that did "not exist" were later batestamped **LEGACY000131** in his possession all along. Pan not

6    only denied its existence in the RO matter, but also in response to a RFP in April 2020.

7    • Pan and Wood finally turned over the written statements alleged under oath to "not

8    exist" because HART was about to take the deposition of one of the witnesses who prepared that

9    written statement.  They even withheld his location for months but HART was able to locate him

10   through a third party.

11   • Pan would then have the audacity to write in his Declaration attached to the

12   opposition to the MTC, "*I must impress upon Respondent that she has a duty to be truthful before*

13   *the court.*" Pan continued, "Even if the court permits the Amended Motion, <u>no further documents</u>

14   <u>would be forthcoming</u> because Legacy has complied with the subpoena and acted in <u>good faith</u>."

15   Miraculously**, LEGACY000131** appeared 4 months later. [It would turn out that his other client,

16   Sullivan, had videos from 10.24.2019 of HART, which she took with her cell phone and he

17   withheld.]

18   • Pan also submitted AUTS Request for Authorization ("RFA") never executed, or

19   worked on, in order to sway the court into believing that $2100 was paid, as to level off the

20   sanctions HART was seeking, $2600. According to Czer, if an RFA is not signed it means it was

21   never worked on. In desperation, days before the opposition was due, Pan writes Edwards, "send

22   me anything you have that is useful." KIM found this conduct acceptable because HART had

23   been labeled.

24   • Hours after Sherrell's deposition, Wood ordered a rush transcript paying $1250 so

25   that <u>Sullivan could have it for the RO matter the following week</u>. All along saying they were, "not

26   representing Sullivan in the RO matter." They would later impede a STATE BAR investigation

27   by alleging that the outcome of the RO matter had "no bearing on the case." Wood then went and

28   boasted in writing to all parties in writing that the RO matter was dismissed "without" prejudice.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

Clearly they believed it would have a "bearing" on the case or they would not have paid $1250 for a rush transcript. **[Axis Capital paid for Pan and Wood (at Lewis Brisbois) to engage in this vile conduct and for the rushed transcript - and are continuing to pay their new counsel, Justin Bubion (referenced below) for similar vile conduct.]**

•    Pan and Wood continued to withhold all the videos from inside the office on 10.24.2019, as they knew they evidenced that not only did HART do nothing wrong, but it would prove that Sullivan had been the aggressor and had lied under oath. [It would turn out she filed a TRO against a boyfriend years prior alleging identical conduct.]

•    Pan & Wood refused to IDENTIFY another witness who would give testimony to Sullivan's obsession with HART, former employee Bethany Lazo, who quit because of Sullivan. Once HART was able to locate her on her own, and serve her a subpoena, Pan called her. Lazo states in a sworn declaration dated August 10, 2020: "A lawyer named, Tommy Pan, called me right away to ask me why I quit at which time I told him because of Courtney [Pan already knew the reason and this is why he refused to IDENTIFY her]. I also expressed that I was surprised they were representing Legacy and Courtney [Sullivan]. He then told me they could "umbrella" me and provide me with a lawyer at the deposition at which time I told him I was no longer an employee, and that I did not need a lawyer from them. He then encouraged me not to speak to Shelly [HART]. I subsequently called Shelly and we spoke for roughly two and a half hours about my experience working at Legacy, which I described as "six of the worst months of my life."

84.    Prior to leaving the case, while a Motion for Sanctions was pending, Pan and Wood conspired with a computer expert, Jim Vaughn from iDS ("Vaughn") to wipe Sullivan's devices and "double delete" records prior to a court ordered extraction in October 2020. [HART believes and therefore alleges that they also gave him her IP address (seen in discovery production) and that he has made unlawful access to her computer and email(s), as well as her dropbox based on an email she received from Dropbox on November 4, 2021.] Pan also partook in discovery and conversations with HART as to the Sullivan extraction despite already substituting out of the case.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

85.     Pan & Wood had a duty to IDENTIFY witnesses and turn over all evidence, and not to waste the court's time with a bogus Opposition filled with lies; California Rules of Professional Conduct, Rule 3.4 (a) and (e) under *Fairness to Opposing Party and Counsel* and Rule 3.1 (a)(1) *Meritorious Claims and Contentions*. Both Pan & Wood's conduct described here proves that they were both in violation of BPC Code, Section 6068, subdivision (d) (seeking to mislead a judge). The conduct was particularly malicious in nature, as had their scheme prevailed and had COVID not delayed the RO matter, HART could have had her freedom taken from her, and been branded with a RO, which is not something one (who is not famous) recovers from.

86.     In May 2020, HART reported both Pan & Wood to the STATE BAR. Wood (**20-O-07131**) and Pan (**20-O-07035**). On or about May 22, 2020, SORENSEN contacted HART to ask for documents. One week later, on May 29, 2020, SORENSEN closed the complaint as to Pan without ever interviewing HART or contacting Pan, due to HART being labeled vexatious. She wrote, "based on our evaluation of the information provided, we are closing the complaint. The court having jurisdiction over this matter is the appropriate venue determining the facts and merits of the case."  Los Angeles Superior Court does not have sole jurisdiction over a lawyer's conduct. SORENSEN closed the complaint because HART was labeled vexatious.

87.     HART is then contacted by KWAN who is allegedly investigating Wood. He is the same Deputy Trial Counsel who closed HART's complaint as to Sternberg, and the bank impersonation matter, at intake - yet here he was, involved in the Wood complaint.

88.     On or about June 1, 2020, HART received a letter from the STATE BAR telling her that her complaint as to Wood, "has been reviewed for further investigation and prosecution, if warranted." The complaint was assigned to investigator Vasquez and Deputy Trial Counsel Andrew Vasicek. In the same form letter, a list of documents were requested - most of which had nothing to do with the allegations made. **Request No. 1**, "Please explain how you came to hire this attorney." HART had not hired Wood. One would think that in 2020 the STATE BAR would have the ability to fill in the form with applicable questions. It was common, even in their form declination letters, to make random findings not even applicable to the allegations.

89.     HART was still in shock that the STATE BAR had turned a blind eye to all of Pan's bad conduct and reached out again. On June 4, 2020, SORENSEN emails HART, "the decision to close this file [Pan complaint] will stand."

90.     [The RO matter was denied by Judge Riff in late June 2020.]

91.     On August 13, 2020, HART receives a letter from the STATE BAR informing her that her complaint against Pan was *now* being reviewed for further investigation. Vasquez was assigned to this complaint as well.

92.     At some time between August 13, 2020, and August 17, 2020, Vasquez interviews HART as to both Pan and Wood. This is the call where he informs HART that he had received a message/instant message asking him "why are you investigating Pan… look who [Hart] is complaining?"

93.     On August 20, 2020, HART received a letter from the STATE BAR telling her that her complaint against Pan was moved to KIM. When HART reached out to Vasquez asking if he knew why, he replied, "*I do not. Nevertheless, Mrs. Kim is the best we have. Rest assured that she will get to the bottom of it, and sort things out. Has the judge made any recent rulings or sanctioned any of the attorneys involved in your case?"* [It would turn out that Pan would be sanctioned $3500 along with the Legacy defendants and Sullivan on October 7, 2020.]

94.     On August 27, 2020, KIM wrote HART asking for the following:

- Jay Sherrell Witness Statement;
- Your Motion to Compel Discovery Responses and the opposition;
- 7/28 Minute Order;
- Pan's Declaration in the RO matter;
- Bethany Lazo's Declaration.

    All documents were produced.

95.     Despite the sanctions and all the evidence given to KIM she would go on to close the complaints against Pan and Wood on October 30, 2020, because HART was labeled vexatious.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

96.     Despite the facts stated here and public records, KIM wrote, "There are insufficient facts to support a finding that Mr. Pan engaged in misconduct regarding the restraining order case." HART believes and therefore alleges that KIM did not apply the facts and take the evidence into consideration due to HART being labeled vexatious.

97.     The declination letter alleged statements made by HART to the STATE BAR that were never made, did not address the alleged search for the videos by Nivardy Flores, the attached exhibits, the AUTS RFA never executed but used to sway the court in the MTC, or Pan's communications with Donald Edwards - not to mention the contact w/ Bethany Lazo. It is obvious from the 7-page letter that KIM had a goal in mind, she was not going to hold Pan & Wood, (both Lewis Brisbois lawyers), accountable, despite giving HART false hope that she would, because HART was unlawfully labeled. In fact, Pan and Wood appear to have interfered with a STATE BAR investigation according to KIM's letter, which is also worthy of reprimand & suspension.

98.     Michael Jay Larin[22], then comes into the case for the Legacy & Sullivan defendants, and on August 7, 2020, foolishly re-files Defendant Sapp's same deceptive sworn declaration from the RO matter alleging Nivardy came to the property, when he had not. He did so with exhibits sent to the STATE BAR in his possession. His stay in the case would be short lived. One month later he was gone due to turning over a document that upset Sternberg (outside counsel for Legacy and LaSalle) who has control over Legacy, and she pressured him to leave the case. HART did not file a complaint against Larin for suborning perjury. The STATE BAR is free to act on its own.

99.     Pan and Wood tampered with a witness, hid two witnesses identification, lied in declarations, plotted to mislead the court to get a RO against HART, and subsequently violated 6106 of the Business and Professions Code (moral turpitude – misrepresentation) and violated Section 6068, subdivision (d) (seeking to mislead a judge).

//

//

[22] Employed at Lynberg, SBN 77116.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

100.    *Justin Arnold Bubion Matter:* The third lawyer for Legacy and Sullivan, Justin Arnold Bubion ("Bubion")[23], would later acknowledge iDS had taken possession of Sullivan devices (ordered extracted) "month's prior" to the extraction despite alleging she had exposure to Covid, as the reason the extraction could not take place. During this time they held the devices back they were able to "double delete" gmails and evidence pertinent to the case. Sullivan was sanctioned $2500 for not complying with the order to turn over the devices. Bubion later threatened on the record that he would get HART sanctioned for having the audacity to actually look at the emails and texts about her ordered extracted by Judge Traber.

101.    Bubion would turn out to be the most corrupt lawyer in the case - and ironically, used to clerk at the STATE BAR. In working there he would have seen first hand what lawyers get away with every day and clearly acts accordingly.

102.    Bubion then somehow, despite the conflict of interest, sways **Axis Capital Insurance,** and **Cozen,** representing Legacy & Sullivan, to release their Reservation of Rights, as to Sullivan and the RO matter, and to allow him to represent her on all allegations against her. Below is just some of the bad conduct Bubion has engaged in to date:

•    Bubion has refused to turn over any documents in discovery citing boilerplate objections to thousands of requests a violation of Bus & Prof Code Section 6068(d) to act truthfully and therefore constitutes bad faith (*Bihun v. AT&T Info. Sys* (1993) 13 CA4th 976,991). Despite alleging attorney client privilege in documents that had nothing to do with attorneys, or any such privilege, he has yet to produce even one privilege log. He has put his signature on pleadings and discovery responses alleging that a declaration for additional discovery (per code) is "vague" and therefore his clients do not have to respond, and makes false allegations in motions when he knows he is lying or misrepresenting the content of his own exhibits. Each of his declarations are filled with provable lies. While this might be common, it is a violation of rules of

---

[23] A partner at Traub Lieberman Straus & Shrewsberry, SBN 240312, [He would move to Quintairos, Prieto, Wood & Boyer in June 2021. It would take him two weeks to file a Notice of Association while he continued to work on the case, and was forced by the court to file substitutions on September 28, 2021.]

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

professional conduct. He refused to turn over substitutions after he changed firms in June 2021 until HART went in on an ex-parte in September 2021, to force him to produce them.

- He is currently attempting to interfere with a good faith determination falsely alleging that HART has "medical claims" against the settling party and that he needs a doctor to examine her despite no such medical claims, and despite never noticing a medical examination or her deposition, in 2 years.  His own exhibits (special interrogatories) attached to his declaration prove that he was lying under oath.

- He did not respond to Sullivan Request for Admissions (Set 8) thereby permitting HART to move to deem them admitted.  When HART notified him of this, he said that she ignored a court order to copy his assistant (no such order exists) and therefore HART had to reserve the set.  It would turn out that he even responded to the email with the propounded discovery attached to it on September 21, 2021, yet refuses to reply. HART has noticed a motion. His lies, incompetence and gamesmanship are never ending.

- Bubion has filed 4 declarations in the case begging the court to allow a referee to stay in the case at $650 an hour, which is unprecedented, as his clients have to pay. One would have to wonder why he was so attached to the ADR referee, who has since withdrawn after a diatribe of alarming emails from Bubion the day prior.

- After learning that HART intended to compel discovery piling up over the last 10 months (motions were stayed for the entire time) in an effort to intimidate her, he filed a motion the next day to re-allocate $28,000 of discovery fees on to HART, a pro per litigant, despite *Solorzano* and the court's reason for bringing in a referee in the first place. He files meritless motion as to deplete the policy putting his own clients in a horrific position come trial. His schemes are endless and a violation of California *Rules of Professional Conduct*, Rule 3.4, *Fairness to Opposing Party* (d) in pretrial procedure, make a frivolous discovery request or <u>fail to make reasonably diligent effort to comply with legally proper discovery requests</u> by an opposing party.

- Bubion, new to the case, and wanting to earn his *fair share*, interfered with a November 2020 mediation settlement as to his own clients, a violation of Business and

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

Professions Code Section 6068, A lawyer "shall Not encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest."

- On May 19, 2021, Bubion filed with the court the following statement, "If Plaintiff genuinely wanted specific videos concerning the movement of trash at the property, she would have requested same in written discovery over the past 8 months. She has not done so." On the very same day Bubion served objections to production of said videos in response to 3 requests for production propounded on his clients a month prior.

- Bubion Filed a MTQ HART's RFP from a third party, Career Strategies, alleging that Sullivan was an "employee" of theirs therefore she did not have to turn over an email she sent prior to becoming an employee, knowing that she was not, and had in fact been on unemployment at the time. The court believed his lies despite HART attaching public records from EDD.

- Bubion had ex-parte communications with ADR, the discovery referee. While he disclosed on the record on June 4, 2021, to having "worked with the referee before," he did not disclose this when he came into the case in October 2020, or during a conflict check.

- In June 2021, eight months after he entered the case, Bubion attempted to clawback 242 documents produced by prior counsel, Pan and Larin knowing this was untimely. HART now had to reserve a motion for determination.

- Bubion lied to the court after he made an error by publishing discovery that the documents were "personnel records" when they were not. The court struck the entire filing believing his lies. He lied, as he had filed the docs he had just tried to clawback.

- Bubion continues to suborn perjury from the Legacy defendants, even permitting his clients who have been previously found guilty of misdemeanor crimes (Steven Lenard Sapp) to lie under penalty of perjury opening him up to additional prosecution.

- Even after Bubion was in possession of the AUTS production proving that Steven Sapp had lied about the 10.24.2019 videos (with Pan) he suborned the perjury of another client of his, Davin Ross, one year later, alleging the same lies as to the AUTS videos.

- Bubion knowingly and intentionally demurred to causes of action, which Judge Traber previously overruled, causing additional work for HART.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

- Bubion published his own client's Social Security Number.

- Bubion has repeatedly counseled his clients to lie in discovery and about as to how to elude a court order to archive its purpose (Sorensen v. State Bar (1991) 52 Cal.3d 1036).

  - Much like Michael Avenati, Bubion is out of control and a bomb waiting to go off.

103. The conduct described above is in clear violation of California *Rules of Professional Conduct*, Rule 3.4 (a) and (e) under *Fairness to Opposing Party* and *Counsel* and 3.1 (a) (1) *Meritorious Claims and Contentions* and are clear examples of Moral Turpitude.

104. HART reported Bubion (who previously clerked at the STATE BAR) to the STATE BAR (**21-O-04103**) on April 1, 2021. ARESCA closed the complaint at intake on April 20, 2021 due to HART being labeled vexatious without any investigation. HART even continued to send him evidence of Bubion's ongoing misconduct in the case. ARESCA still refused to act because HART was labeled "vexatious."

**K.     GORDON, PEIRIS & PARMINTER MATTERS**

105. Based on the above conduct being ignored by the STATE BAR it would be foolish and a waste of time to continue to bring the alarming conduct of any lawyer to their attention until the court intervenes.  Subsequently HART has not reported Gordon, Peiris & Parminter to the STATE BAR's attention, as they will clearly not address the blatant misconduct described here.

- Gordon, a lawyer at KTS representing KTS & Sternberg (whose name also appears on every filing) has improperly sought sanctions against HART at least 4 times in this case to the tune of over $20,000.00. First, they filed a baseless anti-SLAPP just to stay discovery. The motion was deemed moot. They then threatened Judge Traber with an appeal but of course they did not file it. They then filed a PO on Sternberg's deposition requesting thousands in sanctions. That too was denied. They then sought $8000 of sanctions trying to compel the non-redacted 2016 settlement that did not permit HART to disclose terms. They neglected to tell the court that they were representing the parties to the settlement back in 2016. Gordon lied to the court that HART served "boilerplate" objections and was entitled to sanctions when in fact HART served a two-page substantive response. HART was not sanctioned. HART has continued to cite *Argaman v. Ratan* (1999)) as well as *Trope & Kravitz*, which does not permit a self-represented lawyer/firm to

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

get discovery sanctions. The law does not seem to stop Gordon or Sternberg, as they both knowingly and willfully continue to seek out these sanctions and continue to lie to the court that they are not in possession of the 2016 settlement, which they helped draft. In doing so they are filing meritless motions and are in violation of 6106 of the Business & Professions Code (moral turpitude – misrepresentation) as well as in violation of Rule 3-200(A), which prohibits an attorney from asserting a position or defense …. that the attorney knows or should know is without probable cause and for the purpose of harassing or maliciously injuring another.

> • On November 5, 2021, Eli Gordon and KTS responded to Request for Admissions, Set 3.  When asked to "admit" that they told plaintiff's landlords that she had a criminal record and or had restraining orders filed against her, their response, "vague," and subsequently did not admit or deny. When asked to "admit" that their intimidation tactics have led to suicide, their response, "argumentative." Most would simply deny if it were untrue. When asked in **Request for Admissions, No. 121,** "Admit that the woman heard on the attached recording (sample) pretending to be Shelly Hart works for YOU," and in, **No. 122**, "Admit that the 2015 bank impersonation took place from one of YOUR offices." Their only response to both consisted of objections, "work product doctrine, attorney client privilege, and irrelevant." **This is who KTS is.** [The state bar allowed them to get away with impersonating HART on 5 calls to her banking institutions because they had labeled HART vexatious.]

> • Mr. Gordon routinely lies in his declarations, presents false invoices and is currently trying to get another pro per to pay $105,000 in fees simply because they were able to get one cause of action tossed via an anti-SLAPP.  This man and firm are predators. Mr. Gordon also does not file a copy of his anti-SLAPP motions with Judicial Council, as mandated.

> • After Judge LaForteza recused himself, Peiris & Parminter struck Judge Watkins, as they were searching for a male judge. All motions were then taken off calendar including a Motion to Stay a September 14, 2021 Order, which was to be heard on November 15, 2021. Knowing this, Gordon writes the next day that if HART does not move forward with the September 14, 2021 Order that he would go in ex parte (with no judge assigned to hear her MTS) and get "terminating sanctions" against her. HART then went in ex-parte once a new judge was

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

assigned who granted the stay. After HART's writ was denied on October 28, 2021, within 6 days despite the second district's prior rulings, she gave notice to all counsel of her intent to seek Petition Review, and that they would each have a copy by end of week (November 5, 2021). Gordon then overnighted a demand letter on November 3, 2021, demanding that she sign a stipulation as to the September 14, 2021 Order knowing of her intent to seek review.

- Peiris and Parminter have hidden discovery in this case, served boilerplate objections to every set for over one year, refuse to answer 95% of discovery, ignore M&C letters, ask for extensions so that Dupree can "sign his verification," due to he allegedly being on "paternity leave" or "getting married" or "traveling" and then one week later serve boilerplate objections refusing to answer even one request. They both hid defendant Kyle Dupree for 9 months for the first part of his deposition, and for a year, as to the second part. While this might be typical litigation tactics it is still improper, as they lied to the court when they accused HART of not meeting and conferring on the matter in response to a Motion to Compel the deposition. Mr. Peiris continues to state under penalty of perjury that they are being nice by granting a second part of the deposition knowing Dupree has only been deposed for 5 hours and is appearing for 3 parties.

- Peiris & Parminter refused to enter a default on Sullivan and Legacy despite the fact that they had not filed a responsive pleading to their cross-complaints for 18 months.  This is a fraud on the court. The court finally addressed the matter in October 2021, and the cross-defendants were forced to file a responsive pleading. Peiris told the court on the record that he must have "overlooked" the matter despite HART bringing it to his attention in writing on 4 occasions.

- Parminter, ill prepared for Dupree deposition, never showed Dupree any filings or his Affirmative Defenses so he was unable to answer deposition questions. He then got frustrated with HART and had to admit that he filed the defenses without Dupree knowledge and that Dupree would not be answering any questions about them. He then proceeded to demand an offer of proof to the rest of questions because he was not prepared, leading to a 300-page transcript costing HART $1300.00.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

- Peiris & Parminter attempted to get HART labeled "vexatious" via an Affirmative Defense (2 separate times) knowing this was an improper way to do so, and knowing that HART was the prevailing party in her previous suit. Despite HART addressing this over and over in writing they continued to allege it – misrepresenting facts and misleading a judge. The court ultimately sustained without leave after HART demurred to the defense.

- Peiris & Parminter ignored Judge Traber's ruling as to HART's demurrer and then intentionally re-asserted the same Affirmative Defenses the court had previously sustained. They are now refusing to turn over any documents that support any of their remaining defenses. Forcing a pro per to file needless motions to compel.

- Peiris & Parminter ignored instructions from Judge Traber to work with HART and third party Kingsley, to allow for HART's consultant to make access to the Kingsley server to get the original tenant surveys from the server. After HART served a subpoena to Kingsley, Peiris and Parminter told Kingsley not to comply with the subpoena and served a Motion to Quash despite the court's instructions. They then brought the matter to the referee behind the court's back who then would not allow HART access to the server. They got the $650 an hour recommendation which they were seeking and why they are desperate to keep discovery with a referee.

- Peiris & Parminter filed a Notice of MTQ a third party subpoena served on RealPage. They then forgot to file the motion per code so they instructed RealPage not to produce the documents alleging the matter would "now go through the referee," except at this point there is no referee, as he withdrew in September 2021. Additionally, the court entered an order of its intent to take back discovery on October 6, 2021.  All third party matters were to always go through the court and have. He continues to lie to the court and engage in moral turpitude.

- On May 21, 2021, Ashan Peiris knowingly and intentionally published HART's PII despite a January 28, 2021 court order to seal those records.  Instead of taking action to rectify his so-called error he double downed and said he would not seal the document in an opposition to an ex parte to get that information sealed. On October 27, 2021, the court ordered the document

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

sealed. He has made it clear he will not comply with Judge Traber's prior order and has engaged in moral turpitude.

• On July 21, 2021, Peiris & Parminter made false statements to the court in their Opposition to produce Kyle Dupree for part 2 of his deposition and in their attached declaration. They alleged that the first deposition lasted 7 hours when it did not, and alleged, "HART's questions "*were rife with irrelevant questions and topics which caused Dupree's counsel to extensively object.*" Not only was Peiris not at the deposition everyone in the room commented on how ill prepared Dupree was. In an effort to delay the second part of his deposition, Peiris and Parminter told the court that HART, who had been attempting to take the second part of the deposition for one year, "did not meet and confer" when this was blatantly false.  The court believed their false contentions. Peiris & Parminter lied to the court to gain an advantage.

• Peiris & Parminter have repeatedly counseled their clients to lie in discovery and how to elude a court order to achieve its purpose (Sorensen v. State Bar (1991) 52 Cal.3d 1036). Parminter who takes most of his cases to trial, tried to sway a settling defendant not to settle with HART on November 20, 2020. Business and Professions Code Section 6068, a lawyer "shall not encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest."

• Peiris and Parminter haven't propounded any discovery on Legacy defendants and Sullivan despite filing a cross-complaint against them in January 2020. The cross-complaint is a clear sham.

• On October 26, 2021, Mr. Peiris stated under penalty of perjury that Judge Traber ordered a referee "due to the volume" of discovery in the case knowing this was patently false, as he was present during the order and the reason was stated by Judge Traber even ordering his clients to pay along with the other defendants, for the referee due to their conduct.

• The conduct described here is clear misconduct and involved continuous misrepresentations to the court. Again, a Violation of 6106 of the *Business and Professions Code* (moral turpitude—misrepresentation) violating Section 6068, subdivision (d) (seeking to mislead a judge).

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

106.    Case law is well established that moral turpitude includes an attorney's false or misleading statements to a court or tribunal. (In the Matter of Maloney and Virsik (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 774, 786.). Grove v. State Bar (1965) 63 Cal.2d 312, 315 [moral turpitude includes concealment as well as affirmative misrepresentations with no distinction to be drawn between "concealment, half-truth, and false statement of fact"]. False statements in this case made to the court in *Hart v. Sullivan,* and *Hart v. Espinosa,* were for the purpose of securing an advantageous outcome, (In the Matter of Chesnut (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 166, 174–175 [false statement made to tribunal is material when used to secure advantage in forum].)

107.    Each of the lawyers named here should have been investigated and suspended from practicing law and were not because HART was the complaining party and hade been unlawfully labeled. If the STATE BAR holds one lawyer accountable for similar misconduct they must hold them <u>all</u> accountable. They cannot turn a blind eye to substantiated complaints because they have unlawfully labeled HART (or any complainant) vexatious.

**<u>FIRST CAUSE OF ACTION</u>**
**EQUAL PROTECTION OF THE LAWS**
**(42 U.S.C. § 1983 - FOURTEENTH AMENDMENT)**
**(*As Against All Defendants & Doe Defendants 1-50*)**

108.    HART incorporates into this cause of action each and every other allegation and fact pled in paragraphs 1-107, as if fully set forth herein.

109.    Plaintiff is informed and believes and, on that basis, alleges defendants unlawfully deprived plaintiff of her equal protection under the law, in violation of the fourteenth amendment of the U.S. Constitution.

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the <u>equal protection of the laws</u>."

**SHELLY HART**
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

110.    These defendants labeled HART, "vexatious" without due process of law, without notifying her that she was allegedly filing meritless complaints, or allowing her to be heard on the matter, and subsequently closed each one of her valid, substantiated misconduct claims.

111.    Lieb, Raichelson, Newman, Gumm, Ring, Babaian, Sternberg, Wood, Pan & Bubion, all reported for misconduct and violations of *Business and Professions Code* Sections 6068, 6106, 6107 (c), California *Rules of Professional Conduct*, Rule 1.1, 1.5, 1.7, 3.1, 3.4 (a) and (e), Rule 8.4 and Rule 11 and all were not held accountable due to the unlawful labeling of HART.

112.    It is unlawful that the STATE BAR has an internal system that allows any member of the public to be labeled vexatious, or tracked. As stated above and based on plaintiff's interviews with other women (some named here) she does not believe that she is the only woman to have been labeled by the STATE BAR. Both Vasquez and Harvey confirmed this internal tracking system. Being that HART cannot sue under the Unruh Act she has reported their conduct to DFEH.

113.    Lieb, Raichelson, Newman, Gumm, Ring, Babaian, Sternberg, Wood, Pan, and Bubion engaged in at least one of the following: moral-turpitude – blatant misrepresentations in their pleadings, seeking to mislead a judge, destruction of evidence, perjury, subornation of perjury, charging unconscionable fees, incompetence, ignoring court orders, misleading a client, tampering with evidence and witnesses, filing meritless motions, pleadings and defenses, as well as ignoring court orders.

114.    HART does not know at this time which defendant and or employee first labeled her, and how many times the defendants informed the other defendants, and or investigators, not to investigate because of the unlawfully labeling, as only discovery will answer these questions. Regardless, based on the facts pled here the STATE BAR, SORENSEN, KIM, KWAN, ARESCA, TODD & MAZER either labeled HART vexatious or interfered with a valid investigation due to the labeling, and subsequently the lawyers HART complained about are not only continuing to harm HART, and were permitted to rip HART off thousands of dollars and

1   continue to violate Rules of Professional conduct, but they are continuing to hurt other members

2   of the public as well.

3        115.   HART supplied the STATE BAR with sufficient evidence of blatant misconduct,

4   as to each of the lawyer's named in ¶113.

5        116.   HART also supplied evidence (detailed in this complaint) proving violations of

6   *Bus. & Prof. Code, §* 6106 (d) moral turpitude - misrepresentation, and violations of section

7   6068(d), seeking to mislead a judge against Pan, Wood, Ring, Babaian, Newman & Bubion. Case

8   law is well established that moral turpitude includes an attorney's false or misleading statements

9   to a court or tribunal. (In the Matter of Chesnut, supra, 4 Cal. State Bar Ct. Rptr. at p. 174

10  [concealment of material fact to mislead a judge just as effectively as false statement, and violates

11  § 6068, subd. (d); In the Matter of Field, supra, 5 Cal. State Bar Ct. Rptr. at p. 176 [attorney's

12  failure to disclose material information to court related to subject of court hearing is a violation of

13  § 6068, subd. (b)].) (§ 6068, subd. (d) [Seeking to Employ Means Inconsistent with Truth]).

14       117.   HART also provided ample evidence against Lieb and Raichelson not only as to

15  the despicable and unlawful conduct, as to the hot water termination, but as to the meritless filings

16  of 2 Unlawful Detainers knowing the rental was unlawful. The STATE BAR even permitted

17  Sternberg to get away with impersonating HART at her bank. Gumm knew she lacked the ability

18  to handle a Civil Harassment matter and that her work did not equate to demanding $8500, yet she

19  did ($3500 in court) despite HART doing all the work and despite losing the questions at the

20  hearing. She then lied to HART that she could not file an appeal if she lost. Despite ALL these

21  facts and evidence supplied to the STATE BAR, and their employees/agents, they turned a blind

22  eye due to the unlawful labeling of HART as "vexatious."

23       118.   Lieb, Raichelson, Newman, Ring, Babaian, Sternberg, Pan, Wood & Bubion are

24  guilty of violating Rule 3-200(A), which prohibits an attorney from asserting a position or

25  defense on behalf of a client that the attorney knows or should know is without probable cause,

26  and for the purpose of harassing or maliciously injuring another. Their conduct was ignored due

27  to the unlawful labeling of HART.

28

PLAINTIFF'S VERIFED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

119.   Business and Professions Code § 6128(a) provides that "[e]very attorney is guilty of a misdemeanor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . ." Disbarment is necessary to protect the courts, the public, and the legal profession. The fact that there might not be prior discipline is irrelevant. The conduct described here went on for months and in some cases, years.

120.   Yet despite all the facts stated here, email evidence, motions filed w/ false assertions and perjured declarations, Orders, transcripts, declarations and monetary sanctions, all provided to the STATE BAR, each of these defendants refused to act due to unlawfully labeling HART, "vexatious."

121.   As to acts of dishonesty, Standard 2.11 (of the State Bar Act) provides, "Disbarment or actual suspension is the presumed sanction for an act of moral turpitude, dishonesty, fraud, corruption, intentional or grossly negligent misrepresentation, or concealment of a material fact. The degree of sanction depends on the magnitude of the misconduct; the extent to which the misconduct harmed or misled the victim, which may include the adjudicator; the impact on the administration of justice, if any; and the extent to which the misconduct related to the member's practice of law." Moreover, "misrepresentation" is an aggravating circumstance in determining the appropriate sanction for attorney misconduct (Standards, § 1.5(c).)

122.   In response to the alleged investigations by the STATE BAR, as to Pan, Ring, Wood and even Safarian, they each denied all the facts and lied to the STATE BAR. The STATE BAR then simply closed the complaints. **An attorney who fails to accept responsibility for his actions and instead seeks to shift responsibility to others demonstrates indifference and lack of remorse. Yet the STATE BAR ignored this conduct as well due to unlawfully labeling HART, "vexatious."**

123.   HART believes and therefore alleges that had she not been labeled vexatious each of the complained about lawyers would have faced reprimand, suspension and or disbarment pursuant to the California Rules of Professions Conduct, the State Bar Act, case law, and Business & Professions Code, Sections 6068, 6106, 6107 & 6128. By engaging in the conduct herein

described, each of these defendants directly and proximately harmed HART entitling her to damages according to proof, and Injunctive/Declaratory Relief to stop the unlawful labeling of HART.

124.   As a direct and proximate consequence of the acts of defendants and their employees, each of the above named lawyers not only got away with their bad acts, and fee gouging, but are continuing to engage in the same described conduct against HART and others.

125.   HART has suffered and continues to suffer loss of her rights and is entitled to damages.

126.   Additionally, the conduct described above as to each of the named STATE BAR employees was intentional and oppressive and unlawful and was done with the intent to vex, annoy, and humiliate HART, and was of such nature that each should be made an example of for the public good by the imposition of punitive damages on MAZER, TODD, ARESCA, SORENSEN, KIM & KWAN and each doe defendant.

## DECLARATORY RELIEF

127.   HART incorporates into this cause of action each and ever other allegation of this complaint, as if fully set forth herein.

128.   A real and immediate difference exists between HART and Defendants regarding her rights and Defendants' duty owed to HART to protect her as a member of the public, and not to strip her of her constitutional rights. Defendants' policies and actions have resulted and will result in irreparable injury to HART. There is no plain, adequate or complete remedy at law to address the wrongs described herein. Defendants have made clear by their repeated denial of her complaints due to labeling her vexatious that they have no intent on changing their unlawful position and will not take any of her valid complaints seriously because to them she is "vexatious." Defendants have also made clear that they intend to continue the practices described above that make it impossible for HART to report any unscrupulous conduct to the STATE BAR. HART has been unable to report Peiris, Parminter and Gordon due to this unlawful labeling.

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

129.   Defendants' acts alleged above violate established constitutional rights of HART and Defendants could not reasonably have thought that the conduct of their agents and employees in labeling HART was lawful.

130.   An actual controversy exists between HART and Defendants in that Defendants, their agents and employees, have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so. HART claims that these acts are contrary to law and seeks a declaration of her rights with regard to this controversy.

## PRAYER FOR RELIEF

WHEREFORE, HART prays for judgment against each defendant and DOES, as follows:

1.     Enter judgment against these defendants;

2.     For declaratory judgment that defendants policies, practices and conduct as alleged herein violate HART's rights under the United States and California constitutions and the laws of California.

3.     Issue a Temporary Restraining order that any notes, emails about HART and red flags, as to HART being "vexatious," be preserved for trial.

4.     For pre-and post-judgment interest pursuant to C.C.P. §3288 and §3291;

5.     For costs;

6.     For actual and general damages;

7.     For reasonable attorneys' fees for this action;

9.     For any and all further relief as the Court may deem just and proper;

WHEREFORE, HART prays for judgment against MAZER, KIM, TODD, KWAN, ARESCA, SORENSEN and doe defendants as follows:

10.     For punitive damages.

Dated: November 7 , 2021

_____
Shelly Hart in Pro Per

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

PLAINTIFF'S VERFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

1

2

3

## VERIFICATION

4

5
I am the Plaintiff in this case and have read the foregoing **COMPLAINT FOR DAMAGES,**
6
**INJUNCTIVE & DECLARATORY RELIEF** and know its contents.

7
[X] The matters stated in the foregoing document are true of my own knowledge except as to
those matters, which are stated "on information and belief," and or "it appears" and or "it is said"
8
and as to those matters I believe them to be true.

9
I verify under penalty of perjury under the laws of the State of California that the foregoing is true
10
and correct.

11

SHELLY HART
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364

12

13
Executed on November 7, 2021

14

15

16
Shelly Hart in Pro Per

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S VERFIED COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF