Shelly Hart
21781 Ventura Blvd., No. 311
Woodland Hills, CA 91364
Tel:  310-600-7607
Fax: 818-456-4166
Email:  shelly@hartvstatebar.com

Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY HART<br><br>        Plaintiff,<br><br>v.<br><br>THE STATE BAR OF CALIFORNIA, STEVE MAZER, WILLIAM TODD, JASON KWAN, TIFFANY F. SORENSEN, SUSAN KIM, DREW ARESCA, DOES 1 through 50, INCLUSIVE,<br><br>        Defendants. | Case No.: CV 21-8786-CJC-(KK)<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE STATE BAR OF CALIFORNIA, STEVE MAZER, WILLIAM TODD, JASON KWAN, TIFFANY F. SORENSEN, SUSAN KIM, AND DREW ARESCA'S MOTION TO DISMISS**<br><br>Date:   February 24, 2022<br>Time:  10:00AM<br>Dept:   3 or 4<br>Judge:  Hon. Kenly Kiya Kato |

Plaintiff SHELLY HART ("HART") hereby submits her Memorandum in Opposition to The State Bar Defendants' Motion to Dismiss on the grounds set forth herein.

DATED:  January 24, 2022          By:  /s/ *Shelly Hart*

Shelly Hart
Plaintiff in Pro Per

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is an action for damages pursuant to 42 U.S.C. Section 1983, as well as Declaratory & Injunctive Relief. (Comp. at p.6, ¶ 22, p.47:2, pp.47,48, ¶¶ 127-130, p.48:2). The employee defendants are sued in their individual capacity and are "persons" under Section 1983. (Comp. at p.3, ¶ 12). The Defendants cite immunity under Govt. Code § 821 (Mot. at p.7), without citing *the* specific enactment. Under Govt. Code § 820.2 there is no absolute immunity. Additionally, HART is entitled to petition The State Bar under The First Amendment.

While HART has received declination letters she has never received a letter from The State Bar even suggesting that she was allegedly "vexatious." They have not done so because she has not filed even one meritless misconduct complaint.

The State Bar Defendants misrepresent the gravamen of HART'S complaint and barely reference the complaint. HART does not sue under the Fourteenth Amendment "because Plaintiff was dissatisfied with the State Bar's disposition of Plaintiff's complaints regarding various attorneys and her interactions with State Bar employees." (Mot. at p.1:6,7). Nor is any part of the 48-page complaint, "vague." Despite HART not being a vexatious complainant, The State Bar closed HART's valid and substantiated complaints because the supervisors and employees, maliciously, and unlawfully, labeled HART "vexatious" between each other, without proper written notification, or allowing HART to be heard, even encouraging investigators who wanted to investigate, "don't investigate."

As pled, The State Bar has an "instant messaging" capability between employees where they unlawfully label a complainant without due process. (Comp. at p.33, ¶ 92). After interviewing dozens of women (Comp. at p.8:8-22) HART believes this is systemic. HART is not asking this court to reopen any of her prior investigations.

### A.   THE STATE BAR

The State Bar is the only governing and state agency HART can report attorney misconduct to.

Despite the defendants alleging they have "no duty" to protect (Mot. at p.7), they promote this alleged duty of "protecting the public" on their website, and even provide a "How-to-File-a-Complaint" link, (https://www.calbar.ca.gov/ Public/Complaints-Claims/How-to-File-a-Complaint). HART is a member of the public who is entitled to access to The State Bar just like all other persons in California, and under The First Amendment. The State Bar Act, § 6001[1], also spells out their "highest priority" to protect. Instead, they only reprimand 1% of lawyers each year (Comp. at p.7:14-17), and unlawfully label complainants like HART, "vexatious," without permitting them to be heard.

Discovery should be permitted to proceed so that HART can find out when she was first unlawfully labeled, and name all doe defendants that participated, and learn how the unlawful labeling interfered with each substantial claim she made. The fact that lawyers who destroy evidence, and mislead judges are still practicing law because HART was labeled vexatious should deeply concern this court. Business & Professions Code §§ 6068 and 6106 do not even allow for such conduct. (Comp. at p.11, ¶ 37, p.14:4-8, p.24:17-26, p.32:4,5, p.34:21-24, p.35:16-18, p.37:1,2, p.42:26-28, p.45, ¶ 116.)

If the State Bar is truly an extension of the judiciary, as alleged by them, then all members of the public are entitled to be heard "at a meaningful time and in a meaningful manner" (See *Armstrong v. Manzo*, 380 U.S 545 (1965)).

---

[1] State Bar–Protection of the Public as the Highest Priority: Protection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount. (Added by Stats. 2011, ch. 417. Amended by Stats. 2018, ch. 659.)

### B.   COMPLAINT

As there is no shortage of unethical lawyers in Los Angeles, HART began reporting attorney misconduct back in 2017. HART was not aware that her complaints were being "tracked," (Comp. at p.4, ¶16) and that she had been unlawfully labeled "vexatious" amongst the employee and doe defendants. Vasquez, an investigator at The State Bar at the time, informs HART by phone of the unlawful labeling (Comp. at p.10, ¶32), at which time he decides to move forward on the Tommy Pan ("Pan") 2020 claim initially closed by SORENSEN without investigation. Attached to the claim was evidence that Pan intentionally misled a judge, perjured himself, destroyed evidence and tampered with a witness. Court sanctions were also attached. The supporting evidence even proved that Pan asked a third party to produce invoices that could be used (and were used) to mislead the court in an Opposition to a Motion to Compel. (Comp. at p.29:14-p.31:22). Shortly after Vasquez discloses the labeling during the intake interview (SORENSEN had not conducted an interview), KIM stepped in and took the Pan and the Cary Linn Wood ("Wood") investigations away from him. Wood is the partner Pan worked under. KIM then engaged in sham investigations, and closed both complaints on the same day despite overwhelming evidence. (Comp. at p.11, ¶ 36, p.33 at ¶ 95). The conspiracy is clear - she did so because of the unlawful labeling. The facts pled in the complaint over a 5-year period cannot simply be a coincidence, and there would be no motivation for Vasquez to have lied to HART. Regardless, this is a trier of fact issue.

TODD does not deny that the employees unlawfully labeled HART he simply denied that KWAN wrote her that she was labeled (Comp. at p.10, ¶ 34). HART never alleged that it was KWAN who disclosed the unlawful conduct.

HART's claims were not meritless, as the 48-page complaint evidences.

As another example, HART reported William Lieb ("Lieb") in 2017 for coming to her home with a locksmith to take her home without a court order and

conspired to keep her hot water off for two months, and did. HART (and her

lawyers at the time) begged him for 2 months to allow hot water into the property.

Lieb would not comply and then filed a meritless Unlawful Detainer ("UD") while

HART was forced to live in hotel for 2 months at $200 a night. Building & Safety

("B&S") tagged the property due to the lack of permits on the hot water installation,

and lack of Carbon Monoxide detector. Lieb brought in a plumber to pull a permit

but ordered them not to do the work.  This was done to keep HART from

implementing the "repair and deduct" remedy via a licensed plumber so she could

give herself hot water, and move back into the home she was paying $3000 a month

for. The vile conduct, which includes a letter informing HART's lawyer at the time,

that HART "is not entitled to hot water" was given to The State Bar, and is

described in greater detail in the complaint. HART was eventually allowed to have

hot water after B&S threatened Lieb's clients with criminal prosecution. Lieb then

dismissed the meritless UD one day before a demurrer was to be heard. (Comp. at

pp.12-15, ¶¶ 40-41).

 James J. Chang, opposing counsel here, was the investigator in 2017, and

informed HART that Lieb had done "nothing wrong," thereby closing the claim.

(Comp. at p.15, ¶ 43). HART does not know if this in when she is first labeled.

 HART will not go through each lawyer's conduct, as she presumes this court

has read the entire complaint. It is clear there was a conspiracy to deprive. There are

a handful of investigators whose HART's complaints bounce back and forth to and

from. It is clear they communicate with each other and keep a file on her, and all

complaints. (Comp. at p.4, ¶ 16, p.11, ¶ 35). So when one investigator closed one

substantiated complaint, he will close the next, as KWAN did, when HART reported

attorney Jamie Jo Sternberg for partaking in a bank impersonation of HART on

recorded calls (Comp. at p.32, ¶ 87). At no time did KWAN even ask for the

recorded phone calls produced by the bank.

 In another instance, two investigators closed valid complaints, as to attorneys,

Michael Raichelson, and Anita Gumm, on the very same day (Comp. at p. 21, ¶¶ 58-60). The employees were clearly working together to not only gaslight HART but to interfere with her right to petition the government under The First Amendment.

## II.    LEGAL STANDARD FOR MOTIONS TO DISMISS

Through HART's 48-page complaint, she has clearly shown a pattern of intentional behavior by the defendants and a conspiracy to violate her constitutional rights.

The state pleading rules had largely required code, or fact, pleading, under which pleaders were required to allege very specifically the factual bases for their claims. By contrast, under the federal rules a complaint is required only to give the notice of the claim such that the opposing party may defend himself or herself effectively. The theory of the federal rules is that once notice-giving pleadings have been served, the parties are to conduct discovery in order to learn more about the underlying facts. When they have learned the facts, the parties can settle or seek judgment. If the case does not settle but the material facts are clear, the court will grant summary judgment. If material facts are genuinely disputed, the case will go to trial. *Starr v. Baca* 633 F.3d 1191, 1201 (9th Cir. 2011).

A complaint may proceed even though proof seems improbable or recovery is very remote and unlikely. *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1212 (S.D. Cal. 2007).

### A.   Eleventh Amendment Immunity

The State Bar does not have sovereign immunity, as they have their own treasury department and damages can be paid from there. (See *Hess v. Port Authority* (1994) 513 U.S. 30, 49 (holding the most important factor in considering whether to apply sovereign immunity under the Eleventh Amendment is whether the judgment would be paid out of the state treasury.)

The Supreme Court has held that a defendant acting in his official capacity receives the same immunity as the government agency for which he works. *Hafer v.*

*Melo*, 502 U.S. 21, 25 (1991). However, "state officials, sued in their individual capacities, are `persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the `official' nature of their acts." *Id*. at 31.

Furthermore, the Eleventh Amendment does not bar suits to enjoin violations of federal law against state officers. *Ex Parte Young*, 209 U.S. 123, 159-160 (1908). Since HART has sued Defendants for Injunctive Relief (Comp. at p. 43, ¶108, p. 47:2), the relief sought by HART is not barred by the Eleventh Amendment.

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.'" *Dittman v. Cal.,* 191 F.3d 1020, 1027 (9th Cir.1999) (quoting *Graham,* 473 U.S. at 165, 105 S.Ct. 3099); *see also Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (finding that "[p]ersonal capacity suits seek to impose liability on state officials for acts taken under color of state law").

"While the plaintiff in a personal-capacity suit need not establish a connection to governmental `policy or custom,' officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Pena v. Gardner,* 976 F.2d 469, 473 (9th Cir.1992) (quoting *Graham,* 473 U.S. at 166-167, 105 S. Ct. 3099).

The employee defendants have not done so in their motion, and cannot do so. There was no "reasonable reliance on exiting law." In fact the employee defendants took the law into their own hands and decided to maliciously label HART "vexatious" amongst themselves, even encouraging those that did not see her as vexatious, "not to investigate." (Comp. at p.10, ¶ 32).

Individuals are not immune under the doctrine of qualified immunity if they violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[6] *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "A victory in such a suit is a `victory against the

1  individual defendant, rather than against the entity that employs him.'" *Cerrato v.*

2  *San Francisco Community College Dist.,* 26 F.3d 968, 973 (9th Cir.

3  1994) (quoting *Graham,* 473 U.S. at 166-67, 105 S.Ct. 3099).

4       As pled in the complaint, had the employees not unlawfully labeled HART

5  vexatious, the results would have been different, and she would not have been

6  harmed. (Comp. at p. 46:25-28.) HART is still being harmed by many of these

7  lawyers but she cannot file any future complaints with The State Bar (Comp. at p. 6,

8  ¶ 22). The employee defendants by their conduct have made certain of this.

9       **B. FRCP 12 (b)(1)**

10      The State Bar claims subject matter jurisdiction but do not state the reason,

11 HART can only presume the reference is to the Eleventh Amendment. "Where

12 standing is raised in connection with a motion to dismiss, the court is to 'accept as

13 true all material allegations of the complaint, and construe the complaint in favor of

14 the complaining party.'" *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009)

15 (quoting *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009)).

16      **C. FRCP 12 (b)(6)**

17       To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege

18 "enough  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

19 *v. Twombly*,  550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

20 plaintiff pleads factual content that allows the court to draw the reasonable inference

21 that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct.

22 1937, 1949 (2009).

23      While there is a 48-page complaint that clearly evidences conspiracy to

24 deprive HART of her rights, Mr. Vasquez telling HART she was labeled inside The

25 State Bar, and KIM taking the complaints from him and closing them (Comp. at p.

26 10, ¶ 32) is sufficient to pass the test.

27      A motion to dismiss under Fed. R.Civ.P. 12(b)(6) is disfavored and rarely

28 granted: "[a] complaint should not be dismissed unless it appears beyond doubt that

1  plaintiff can prove no set of facts in support of his claim which would entitle him to

2  relief." *Van Buskirk v. CNN, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002) (citations

3  omitted)). In deciding whether to grant a motion to dismiss, the court "accept[s] all

4  factual allegations of the complaint as true and draw[s] all reasonable inferences in

5  favor of the nonmoving party." *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.

6  1999).

7      Motions to dismiss for failure to state a claim "are generally viewed with

8  disfavor." *Ramos*, 857 F. Supp. at 704. "Each averment of a pleading shall be

9  simple, concise, and direct." Fed.R.Civ.Proc. § 8(e)(1). Under this liberal pleading

10  standard, "a complaint should not be dismissed unless it appears `beyond doubt' that

11  plaintiff can prove no set of facts in support of the claim which would entitle him or

12  her to relief." *Ramos*, 857 F. Supp. at 704 (quoting Conley v. Gibson, 355 U.S. 41,

13  45-46 (1957)). Moreover, courts must assume that all general allegations "embrace

14  whatever specific facts might be necessary to support them." *Peloza v. Capistrano*

15  *Unified School Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

16      **D. HART does not Fail to State a Claim Under 42 U.S.C § 1983**

17      In interpreting Crawford-El, the Ninth Circuit noted that "nearly all of the

18  circuits have now disapproved any heightened pleading standards in cases other than

19  those governed by Rule 9(b)." *Galbraith v. County of Santa Clara*, <u>307 F.3d 1119,</u>

20  <u>1125</u> (9th Cir. 2002). The Ninth Circuit also has noted the Supreme Court's holding

21  that "courts could not impose a heightened pleading standard on plaintiffs alleging §

22  1983 claims against municipalities." Id. at 1124 (referring to *Leatherman v. Tarrant*

23  *County Narcotics Intelligence Coordination Unit*, 507 U.S. 163 (1993)). These

24  findings in *Galbraith* evidence that both the Supreme Court and Ninth Circuit

25  adhere to liberal pleading standards for section 1983 actions.

26      In *Konig,* the court found that the distinction between state and

27  municipalities not relevant as to section 1983.

28      HART has clearly stated that she being a woman played a part in the State

Bar conduct (Comp. at pp.8, 9, ¶ 27, at p.11, ¶ 35, at p.44, ¶ 112), even if the court finds that women are not entitled to equal protection under The Fourteenth Amendment, HART was still entitled to petition the state agency who claims they are there to "protect the public." (Comp. at p. 2:17,18). HART was not only entitled to submit her misconduct claims to The State Bar, who alleges protection of the public is their "highest priority" (*See* Memorandum, *fn. 1*) she was entitled to notice that she was allegedly "vexatious" and not via a whistleblower of sorts, Mr. Vasquez. She was unlawfully labeled thereby depriving her of her rights.

Section 1983 provides for liability against any person acting under color of law who deprives another `of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 887 (9th Cir.2003) (quoting 42 U.S.C. § 1983).

The fact that a complainant can petition The Supreme Court (Rule 9.13(d)) (Mot. at p.7), a substantial undertaking, which The State Bar intentionally does not disclose to the public in their boilerplate declination letters, does not justify deprivation of HART's rights. Unless one operated inside the court system and has sued the State Bar there would be no way for the public to even know that such a Rule of Court even exists. It would behoove the State Bar to be more transparent as to the Rule and to outline the stringent requirements of such a petition.

Regardless, when a Chief Administrative Officer and attorneys in the Office of Chief Trial Counsel conspire to label HART "vexatious," without due process, and attempt to obstruct an investigation and did (Comp. at p.10, ¶¶ 32, 34) the immunity is inapplicable. See *Dailey v. Los Angeles Unified Sch. Dist.*, (1970) 2 Cal.3d 741. Liability under §1983 can be established by showing that the defendants either personally participated in a deprivation of the HART's rights, or caused such a deprivation to occur. *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9 Cir. 1981).

## III. DECLARATORY RELIEF

HART seeks Declaratory Relief (Comp. at p. 6, ¶ 22, pp.47, 48, p.48:12-14) on both The State Bar and the employee defendants. To establish an entitlement to such relief for pleading purposes, a plaintiff need only describe the existence of a genuine legal dispute over a matter within the jurisdiction of the Court.

Proceedings under the Declaratory Judgment Act are governed by the same pleading standards that are applied in other federal civil actions.' [Citation.] The plaintiff must allege a 'justiciable controversy' in order to state a claim for declaratory relief. ... *Maryland Gas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S. Ct. 510 (1941)); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S. Ct. 461 (1937); *Tennessee Coal, Iron & R. Co. v. Muscoda Local* No. 123, etc., 137 F.2d 176 (5th Cir. 1943) aff'd 321 U.S. 590 (1944).

HART has established the existence of an actual controversy warranting declaratory relief.

## IV. LEAVE TO AMEND

HART has asserted sufficient facts under Section 1983 against the State Bar and employee defendants, as well as for Injunctive/Declaratory Relief against them. If the court disagrees, HART should be permitted to amend under The California/Government Tort Claims Act (Comp. at p.3:22-28), as well as for violations under The First Amendment, and any other cause available to her.

## V. CONCLUSION

For the reasons stated above this motion to dismiss should be denied.

Dated: January 24, 2022                                    Respectfully submitted,

                                                By:  /s/ *Shelly Hart*
                                                Shelly Hart in Pro Per